UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
ADAM B. ABELSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7750
MDD_ABAchambers@mdd.uscourts.gov

**LETTER ORDER AND OPINION**

November 22, 2023

To:      Counsel of Record

Subject:    *Shipley v. Disney, Jr., et al.*, Case No. 21-cv-3173-SAG
            Rule 30(b)(6) Deposition Topics

Dear Counsel,

Pending before the Court is a dispute related to certain topics in Plaintiff Clarence Shipley's Rule 30(b)(6) notice. *See* ECF Nos. 94 & 95. A telephonic discovery hearing was held on November 14, 2023.

Mr. Shipley brought this action against the Baltimore Police Department ("BPD") and seven current and former Baltimore Police Officers. Plaintiff alleges constitutional violations and state law claims in connection with his arrest and conviction. Simplified, Mr. Shipley asserts two sets of claims: (1) those seeking to hold the individual officers liable for constitutional violations and state law claims in connection with the investigation and prosecution of Mr. Shipley, and (2) claims asserted pursuant to *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), and its progeny.

Discovery and trial in this case are bifurcated as to Mr. Shipley's *Monell* claims against BPD. As Judge Gallagher explained in her bifurcation order:

> In order to establish *Monell* liability on the part of the BPD, Plaintiff first will have to establish that he suffered constitutional injury. Discovery as to the facts of his particular investigation and conviction will be complex due to the age of his case, but relatively limited in purview. *See, e.g., Marryshow* [*v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991)]. In contrast, the more expansive *Monell*-related discovery requested by Plaintiff would extend into other wrongful conviction cases and disciplinary complaints dating back thirty-plus years, between 1983 and 1993. See ECF 64-1 at 4-7. Distinguishing the *Monell*-related discovery from that relating directly to the facts of Plaintiff's conviction should be a simple proposition, and reserving the much broader discovery until a particular constitutional violation has been established could greatly assist in narrowing the scope of discovery, the length of time it will take to conduct, and the overall expediency of the case. Further, I am unpersuaded that there is any real risk of deterioration of

> memory that might accrue during the relatively minor delay that will accompany bifurcation. Any memories that have survived thirty-plus years are unlikely to fade in the next year or two.
>
> In so ruling, however, I expressly contemplate that the requested discovery relating to the particular officers who have been sued in this case will be permitted, along with more general discovery relating to the written policies, practices, and procedures of the BPD during the time between 1983 and 1993. The *Monell* discovery that will not be permitted at this time relates to incidents involving other BPD officers unrelated to the instant case. Plaintiff will have evidence of BPD's standard policies, practices, and training, the specific training given to the officers at issue in his case, and the conduct of those officers in his case and other cases, which should suffice to allow him to prove all elements of his claims as pled against the Officer Defendants.
>
> Additionally, I am persuaded that the bifurcation of trial on the *Monell* claim in this case will advance judicial economy and minimize any prejudice to the Officer Defendants. Significant prejudice would accrue to those defendants if evidence of other officers' wrongful conduct in unrelated cases were to be admitted into evidence at the trial against them. *See Marryshow*, 139 F.R.D. at 320. And, if there is a finding of individual officer liability or of qualified immunity that leaves viable a *Monell* claim against the BPD, the second trial may prove unnecessary for a variety of reasons that would not prejudice Plaintiff's ability to obtain full relief for his claims. Thus, issues of prejudice and considerations of judicial economy weigh in favor of bifurcation for trial.
>
> With respect to McLarney, he will be subject to the same discovery as the other Officer Defendants regarding his personal history of similar claims, as he is also a defendant as to Counts One, Two, and Three as to his personal conduct. Furthermore, as to the supervisory liability claim, Plaintiff may seek discovery of materials that are relevant to proving whether McLarney failed to adequately supervise the other Officer Defendants during their investigation of Plaintiff. As a general matter, however, requests related to McLarney's supervision of other officers in unrelated incidents will be part of the bifurcated *Monell* discovery to be addressed at a later time.

ECF No. 65 at 2-3 ("Bifurcation Order").

I have previously addressed two other recent discovery disputes in this case: one related

*Shipley v. Disney, Jr., et al.*, Case No. 21-cv-3173-SAG
November 22, 2023

to the timeliness of Plaintiff's 30(b)(6) notice, ECF No. 91, and one related to opinion vs. fact work product in the Conviction Integrity Unit's memorandum regarding its re-investigation of the prosecution of Mr. Shipley, ECF No. 96.

The parties' current dispute turns on applying Judge Gallagher's Bifurcation Order to two topics in Mr. Shipley's notice seeking the Rule 30(b)(6) deposition of BPD. Although Plaintiff disagrees with Judge Gallagher's decision to bifurcate discovery and trial, *see* ECF No. 94 at 2 n.2 (citing *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454 (D. Md. 2020), in which Judge Hollander *denied* bifurcation), the question currently presented is not whether bifurcation is appropriate, but rather whether Topics 3 and 5 fall within the scope of relevant and proportional discovery with respect to Plaintiff's non-*Monell* claims.

## Topic 3

Topic 3 seeks the following:

> Complaints made, whether formal or informal, and disciplinary actions taken against the Officer Defendants concerning their conduct as employees of the BPD, as reflected in their IAPro History, including incidents relating to complaints of excessive force, neglect of duty, and failure to supervise. This topic specifically includes complaints and disciplinary actions made during the following time periods, as reflected in the Officer Defendants' IAPro histories:
> a. Defendant Thomas Frank Gerst: any and all undated incidents and incidents between 1975 and 1988.
> b. Defendant Terrence P. McLarney: any and all undated incidents and incidents between 1978 and 1999.
> c. Defendant Deems Martin Disney, Jr.: any and all undated incidents and incidents between 1981 and 1983.

ECF No. 94-1 at 5.

The discovery Mr. Shipley seeks through this topic is not testimony regarding complaints in connection with his prosecution, but rather testimony regarding complaints or disciplinary actions with respect to the Officer Defendants in connection with *other* incidents during the specified time periods.

Defendants have already produced what they contend are all documents relevant to complaints made or disciplinary actions taken against Officers Gerst, McLarney and Disney, Jr., including what the parties refer to as IAPro summaries of such prior complaints or disciplinary actions. Accordingly, the question comes down to whether, in the non-*Monell* phase of this bifurcated § 1983 case, and in the framework of Rule 26(b)(1)—which requires that discovery not only be relevant to the parties' claims or defenses, but also proportional to the needs of the case—Mr. Shipley is entitled to require one or more BPD representatives to prepare for and be

*Shipley v. Disney, Jr., et al.*, Case No. 21-cv-3173-SAG
November 22, 2023

deposed on the subject of complaints and disciplinary actions with respect to these officers, who were involved in Shipley case, but regarding investigations, prosecutions, or other incidents unrelated to the prosecution of Mr. Shipley.

Mr. Shipley contends that that information is relevant to Mr. Shipley's non-*Monell* claims because such records may reflect that these officers violated BPD policies, and/or may suggest that these officers, on other occasions, engaged in excessive force or neglect of duty. In addition to being potential FRE 404(b) evidence, Mr. Shipley contends that such other incidents would be relevant to prove the "bad faith" element of Mr. Shipley's *Brady* claim. Mr. Shipley further contends that Topic 3, in addition to seeking 30(b)(6) testimony about the substance of such complaints or disciplinary actions, seeks testimony regarding how BPD keeps records of complaints or disciplinary actions and how the IAPro summaries are prepared.

BPD contends that because it has produced all documents on the subjects in Topic 3, and given the age of the incidents in question, it would be unduly burdensome, and thus disproportionate to the needs of the case (or at least this phase of the case), to require BPD to prepare a witness to testify about incidents that occurred many years ago. BPD further states that particularly given the age of the incidents at issue, it simply does not have any information beyond that set forth in the documents that BPD has already produced, and thus a 30(b)(6) disposition on these topics would be a waste of time.

The Court finds that Topic 3 seeks information within the scope of permissible discovery as to Mr. Shipley's non-*Monell* claims, particularly given that the documents pertinent to this topic have been produced, and because it seems the principal information Mr. Shipley seeks is to better understand how the IAPro summaries are prepared, whether other documents relevant to complaints or disciplinary records exist, and the like. Such information provides discrete information reasonably tied to "discovery relating to the particular officers who have been sued in this case," as Judge Gallagher has ruled is permitted. Bifurcation Order at 3. Counsel for BPD has indicated that although it did not initially understand Topic 3 to include such information—as opposed to information about the underlying complaints or incidents—BPD would be willing to make a witness available to explain the nature of the IAPro summary process and the like.

Moreover, although BPD has stated that it has produced all documents related to these individual officers' complaint and disciplinary histories, Mr. Shipley is entitled to probe that question in the context of a deposition. And finally, insofar as Mr. Shipley seeks information known to BPD that exists outside the context of documents, although BPD has stated there is no such information, Mr. Shipley is entitled to probe in the context of a deposition whether BPD has taken reasonable steps to identify whether there is "information known or reasonably available to the organization," Fed. R. Civ. P. 30(b)(6), on the subject of these officers' complaint and disciplinary histories, and if there is any, to discovery of that information.

## Topic 5

Topic 5 seeks 30(b)(6) testimony from BPD on its "policies, practices, and procedures . . . whether formal or informal" during the 10-year period from 1983 (eight years before the

*Shipley v. Disney, Jr., et al.*, Case No. 21-cv-3173-SAG
November 22, 2023

October 1991 murder for which Mr. Shipley was wrongfully convicted) through 1993 (the year after Mr. Shipley's sentencing in July 1992) concerning:

- sharing of information and/or files among BPD's police officers, agents, detectives, and any other employees, prosecutors with the SAO and/or a defendant in a criminal matter;
- the interviewing and interrogation of witnesses;
- the identification and elimination of suspects;
- conducting eyewitness identification procedures, including photo arrays;
- preparing reports and memoranda, including incident reports, prosecution reports, police reports, supplemental reports, and supplemental memoranda;
- documenting an investigation; and,
- *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

ECF No. 94-1 at 6.

On one hand, a police department's "policies, practices, and procedures" ordinarily are standard-fare *Monell* discovery. After all, a *Monell* claim in the policing context generally turns on whether individual officers "were executing an official policy or custom of the local government that violated the plaintiff's rights." *Johnson*, 500 F. Supp. 3d at 459 (citing *Monell*, 436 U.S. at 690-91). On the other hand, Mr. Shipley contends that testimony about those policies, practices and procedures is relevant to his non-*Monell* claims because whether the individual officers are liable may turn on how the types of policies enumerated in Topic 5 "operated" or were carried out on a day-by-day basis.

The Court finds that the bulk of the testimony sought in Topic 5 falls outside the scope of discovery during this non-*Monell* phase. Judge Gallagher permitted discovery, during this non-*Monell* phase, "relating to the written policies, practices, and procedures of the BPD during the time period between 1983 and 1993," stated elsewhere as "evidence of BPD's standard policies, practices, and training." Bifurcation Order at 3. The purpose of bifurcation was to "reserve[e] the much broader discovery until a particular constitutional violation has been established," in aid of "narrowing the scope of discovery, the length of time it will take to conduct, and the overall expediency of the case." *Id.* at 2.

Judge Gallagher recognized that evidence of what BPD's "standard policies, practices, and training" are might have some relevance to the liability of the Officer Defendants, but struck the proportionality balance called for by Rule 26 by limiting such discovery to BPD's "written" or "standard" policies, practices, and training. BPD has stated that it has already produced all written policies and procedures on these specified topics, insofar as written policies or procedures exist on these subjects. And Topic 5 seeks information about BPD's policies, practices and procedures untethered to the Officer Defendants' conduct in connection with the prosecution of Mr. Shipley, or the Officer Defendants' complaint and disciplinary history;

5

*Shipley v. Disney, Jr., et al.*, Case No. 21-cv-3173-SAG
November 22, 2023

discovery that *is* tethered to those topics is sought elsewhere.

The one exception is with respect to what Mr. Shipley refers to as BPD's "*Brady* policy." The Court understands that there has been some testimony from individual, *i.e.*, non-30(b)(6), witnesses indicating that BPD had an express policy with regard to *Brady/Giglio* compliance, but that such policy, although understood by officers, was not written down. The Court is not in a position to understand whether there was such a policy, or whether it constituted a standard (but unwritten) policy. But given the relevance of such policy, if any, to the *Brady* claim against the Officer Defendants, Mr. Shipley is entitled to 30(b)(6) testimony from BPD on whether, during the 1983-93 time period, BPD maintained a standard policy, practice or procedure concerning *Brady/Giglio* compliance, and if so what it was.

Although in letter form, this is an order and opinion of the Court and should be docketed as such.

Sincerely,

/s/

Adam B. Abelson
United States Magistrate Judge