IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLARENCE SHIPLEY,
   *Plaintiff*,

v.

DEEMS MARTIN DISNEY, JR., *et al*,
   *Defendants*

No. 21-cv-3173-SAG

**MEMORANDUM OPINION AND ORDER**

In 2018, Clarence Shipley's conviction for the 1991 murder of Kevin Smith was vacated, following an investigation by the Conviction Integrity Unit ("CIU") of the Baltimore City State's Attorney's Office, the Mid-Atlantic Innocence Project, the University of Baltimore School of Law's Innocence Project, and the Office of the Public Defender. He brought this damages action in December 2021. The Court (Judge Gallagher) granted motions to dismiss as to some of Mr. Shipley's claims, but concluded that his amended complaint (ECF No. 27) stated several claims on which relief could be granted. ECF No. 46. Mr. Shipley's *Monell* claims against BPD have been bifurcated, *see* ECF Nos. 65 & 100, and thus discovery is presently proceeding as to Mr. Shipley's non-*Monell* claims against individual defendants Deems Disney, Jr., Terrence McLarney, Edward Henneman, Sr., Thomas Gerst, and LeRoy Stanton ("Defendants"). *See* ECF No. 99 (scheduling order).

The case has presented a number of discovery disputes. *See* ECF Nos. 65 (order on motion to bifurcate and stay), 77 (order on motion to compel subpoena compliance), 84 (show-cause order regarding witness deposition), 91 (order regarding timeliness of 30(b)(6) deposition notice), 96 (order regarding redactions to CIU memorandum), 100 (order regarding scope of

30(b)(6) deposition). Presently pending is another discovery dispute, this one prompted by Defendants' request pursuant to Federal Rule of Civil Procedure 35(a) that their expert, Dr. Steven Gaskell, Psy.D., be permitted to conduct a "virtual mental examination to assess [Mr. Shipley's] claim that he suffers post-traumatic stress disorder and emotional distress as alleged in his Amended Complaint and his Answers to Defendant LeRoy Stanton's First Set of Interrogatories." ECF No. 102 ("Defs.' Letter") at 1. Mr. Shipley opposes the request. ECF No. 103 ("Pl.'s Letter"). For the following reasons, the Court grants Defendants' request, with some restrictions as explained below.

## RULE 35 STANDARD

Under Federal Rule of Civil Procedure 35, a court may order a party whose mental or physical condition is "in controversy" to submit to a physical or mental examination by a suitably licensed or certified examiner. Fed. R. Civ. P. 35(a). Such an order may only be made on motion for "good cause" and with notice to the person to be examined. *Id*. The order must also "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *Id*.

The dual requirements of Rule 35—that the person's condition be "in controversy" and that "good cause" be shown—distinguish court-ordered physical and mental examinations from other discovery tools. Document production, interrogatories, and depositions, for example, generally are permitted so long as the discovery sought is relevant, non-privileged, and proportional to the case. *See* Fed. R. Civ. P. 26(b)(1). But "by adding the words 'good cause,' the Rules indicate that there must be greater showing of need under [Rule 35] than under the other discovery rules." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) (quoting *Guilford Nat. Bank*

of Greensboro v. S. Ry. Co., 297 F.2d 921, 924 (4th Cir. 1962)).[1] Rule 35 imposes those heightened requirements "given the potentially serious invasion of privacy called for by a mental or physical examination." *Rich v. Diana Consulting Servs. LLC*, Civ. No. SAG-21-1670, 2022 WL 1289663, at *3 (D. Md. April 28, 2022). These requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf*, 379 U.S. at 118. The trial court "must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Id.* at 118–19. Although these elements are distinct and implicate different concerns, they are "necessarily related." *Id.* at 119.

Determining the propriety of a court-ordered mental examination is an "intensely fact–specific" enterprise. 8B Charles A. Wright, *et al.*, Federal Practice and Procedure § 2234.1 (3d ed.). As for the "in controversy" requirement, courts put significant weight on whether the party whose examination is sought was the party to put the condition at issue. Where, for example, a plaintiff "asserts mental or physical injury" resulting from a defendant's allegedly wrongful conduct, the plaintiff "places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. at 119. Courts are more skeptical of examination

---

[1] The *Schlagenhauf* court also referred to Rule 34, which applies to inspection of documents, other tangible things, and land. Fed. R. Civ. P. 34(a). Although at the time *Schlagenhauf* was decided Rule 34, like Rule 35, required "good cause," that requirement was removed in 1974. *See* Fed. R. Civ. P. 34, Notes of Advisory Committee on Rules—1970 Amendment.

requests where the person's condition was "placed in issue by other parties." *Id.* But regardless of which party put the condition at issue, "good cause" requires demonstrating more than "mere relevance" of the examination to the issues in the case. *Schlagenhauf*, 379 U.S. at 118. Whether good cause exists generally turns on whether "the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries." *Jones v. Campbell Univ., Inc.*, No. 5:20-CV-29-BO, 2020 WL 4451173, at *4 (E.D.N.C. Aug. 3, 2020) (internal quotation marks and citations omitted).

The moving party's ability "to obtain the desired information by other means" may also be relevant, as the Supreme Court has emphasized that a party seeking a physical or mental examination must make a "showing of need" for such an examination. *Schlagenhauf*, 379 U.S. at 118. "A compelled exam . . . may not be justified if the information sought 'could have been obtained through less invasive tools of discovery.'" *Nicholson v. Baltimore Police Dep't*, No. DKC-20- CV-3146, 2022 WL 1104575, at *2 (D. Md. Apr. 13, 2022) (quoting *EEOC v. Maha Prabhu, Inc.*, No. 07-cv-0111, 2008 WL 2559417, at *2 (W.D.N.C. June 23, 2008)). For example, where the dispute is simply over whether a plaintiff has been diagnosed with a particular disorder, "production of records pertaining to plaintiff's physical condition" generally "will answer defendant's questions." *Hughley v. Baltimore Cnty. Gov't*, No. CCB-19- CV-1578, 2021 WL 6655870, at *2 (D. Md. May 13, 2021). *See also, e.g.*, *Shukmaker v. West*, 196 F.R.D. 454, 457 (S.D.W.V. 2000) (denying request for Rule 35 order where there was "ample medical evidence relating to Plaintiff's PTSD"); *Nicholson*, 2022 WL 1104575, at *3 (denying Rule 35 motion because movant "ha[d] not shown that other means of obtaining the requested information have been exhausted because he has not yet examined [the plaintiff's] medical records"). In other circumstances, an examination of existing medical records is insufficient. *See,*

*e.g.*, *Rich*, 2022 WL 1289663, at *5 (finding good cause where plaintiff was "seeking relief for claimed injuries based on subjective complaints of head pain, vertigo, nausea, photophobia, and phonophobia," and because "neuropsychological examination is an appropriate means by which Defendant may acquire evidence to support a contention that Plaintiff's ongoing injuries and subjective complaints in this case are exaggerated or have a psychological cause"); *Pauley v. United States*, No. 3:12-cv-8558, 2013 WL 6195730, at *1-2 (S.D.W.V. Nov. 27, 2013) (granting a motion to order an examination where "the nature, extent, cause, prognosis, permanency, and consequences of [plaintiff's] neurological impairments are at issue," and concluding that "Defendant should not be forced to rely exclusively upon [plaintiff's] medical records and the testimony of her treating physicians to establish or contest the nature and extent of her injuries"). "At bottom, analysis of [the 'in controversy' and 'good cause' requirements] aims to balance the need for an examination against the burdens it imposes." *Nicholson*, 2022 WL 1104575, at *2.

Finally, where a plaintiff seeks recovery for emotional distress, mental health disorders or the like, courts consider the severity and complexity of the alleged condition in deciding whether an examination is necessary and appropriate. "[T]here is a difference between more serious emotional distress that might be diagnosed and treated as a disorder by a psychiatrist and the less serious grief, anxiety, anger, and frustration that everyone experiences when bad things happen." *Ricks v. Abbott Laboratories*, 198 F.R.D. 647, 649 (2001). Although "[p]laintiffs may recover damages for either type of distress . . . a defendant cannot require a plaintiff to submit to a mental examination when the plaintiff alleges only the latter kind of emotional distress." *Id.*

The fact-intensiveness of these inquiries means Rule 35 eludes simple encapsulation. But, in summary, courts have coalesced around the following non-exhaustive set of circumstances where ordering a Rule 35 examination is generally appropriate:

> (1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder; (3) plaintiff has claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of her claim for emotional distress damages; and (5) plaintiff concedes that her mental condition is "in controversy" within the meaning of [Rule] 35(a).

*Id.* at 648–49 (quoting *Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998)).

## DISCUSSION

**I.     The Existence and Extent of Mental Injury Due to Mr. Shipley's Wrongful Conviction is "In Controversy"**

There can be little question that Mr. Shipley has put his mental condition in controversy. In his complaint, he expressly alleged that, as a result of his wrongful imprisonment, he suffered and continues to suffer "emotional distress," Am. Compl., ECF No. 27 ¶¶ 171, 175, 179, 185, 193, and that "[t]he aftermath of confinement in Maryland's prisons causes Mr. Shipley to experience flashbacks, night terrors in which he wakes up screaming, anxiety, depression, and posttraumatic stress disorder." *Id.* ¶ 163. And in his answers to interrogatories, he emphasized the "immense emotional pain" that he alleges resulted from his protracted and wrongful incarceration, and that he suffered "significant trauma" that cannot be reduced to "discrete occurrences." ECF No. 102-1 at 2. He further contends that, since his release, he has sought "mental health therapy," and "the exact emotional toll of his incarceration remains unclear." *Id.* Such allegations render Mr. Shipley's mental condition beyond merely "relevant" under Rule 26, but "in controversy" within the meaning of Rule 35.

## II. Defendants Have Shown "Good Cause"

With Mr. Shipley having put his own mental condition "in controversy," the question becomes whether Defendants have made the requisite "affirmative showing . . . that good cause exists for ordering" that Dr. Gaskell be permitted to conduct a mental examination of Mr. Shipley. *See Schlagenhauf*, 379 U.S. at 118. As noted above, the "good cause" prong of Rule 35 generally turns on whether "the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries." *Jones*, 2020 WL 4451173, at *4. Here, for multiple reasons, Defendants have shown good cause.

First, Mr. Shipley has "alleged a specific mental or psychiatric injury or disorder." *Ricks*, 198 F.R.D. at 648-49. Anxiety, depression, and post-traumatic stress disorder, which Mr. Shipley claims to have sustained as a result of his wrongful incarceration, are distinct psychological disorders with identifiable clinical meanings and treatment protocols. They are not necessarily "straightforward and easy to understand," as Plaintiff contends. Pl's letter at 2. Because a layperson would likely "have difficulty evaluating the nature, extent, and cause of" these disorders, a mental health examination is appropriate. *Jones*, 2020 WL 4451173, at *4.

Second, Mr. Shipley has "claimed unusually severe emotional distress" due to Defendants' purported unlawful conduct. *See Ricks*, 198 F.R.D. at 648-49. Mr. Shipley acknowledges his trauma as significant, alleging that he has sought professional treatment for his emotional distress since his release from prison, and attributes his injuries to Defendants' actions. ECF No. 102-1 at 2. That he does not, at least at present, intend to offer expert testimony to establish these components of his alleged injuries is not a persuasive basis to refuse an examination. Mr. Shipley has not suggested that he is prepared to stipulate to omit mental distress from the damages he seeks, or to exclude evidence of such distress at trial. *See, e.g.*,

*Rich*, 2022 WL 1289663, at *2 (noting that "[i]n the course of discovery, Plaintiff has "expressly set aside any claims for traumatic brain injury and neurocognitive disorder"). Because his anxiety, depression, and post-traumatic stress disorder claims remain as live controversies in this case, Defendants are entitled to have their expert explore those alleged conditions, including their nature, extent, and cause(s), regardless of whether Mr. Shipley intends to call an expert at trial on those issues. *See id.* at *5.

Third, the parties heavily dispute whether the existing medical records are adequate for an expert to reasonably or reliably assess the extent, nature and cause(s) of Mr. Shipley's alleged mental health conditions. *See* Defs.' Letter at 2 ("Defendants should not be forced to rely exclusively on Plaintiff's medical records to contest the nature and extent of their claimed injuries."). Mr. Shipley himself asserts that "the exact emotional toll of his incarceration remains unclear," ECF 102-1 at 4, and even appears to question the reliability of his prison medical records. At deposition, at least according to Defendants, Mr. Shipley explained that he did not report his mental health issues to prison medical staff because "[the medical staff is] not going to get you the help that you need. . . They [*sic*] just there for a paycheck . . . [to] keep you behind bars." Defs.' Letter at 3. Requiring Defendants to mount a defense relying solely on the available documentation would, in these circumstances, unfairly force Defendants to contest the mental distress evidence at trial through a cross examination of Mr. Shipley or his providers, with just his medical records. *See Pauley*, 2013 WL 6195730, at *1-2.

For these reasons, there is good cause for a Rule 35 mental examination.

**III.    The Requested Examination Will Be Permitted, With Restrictions**

Mr. Shipley contends that, if an examination by Dr. Gaskell is permitted, the Court impose six "parameters" on such an examination:

> (1) no recording of Plaintiff's interview; (2) no testing of any kind; (3) limiting attendance at the examination to only Plaintiff and Individual Defendants' expert; ([4]) limiting Individual Defendants' expert to asking Plaintiff about his claimed emotional injuries stemming from his prosecution, conviction, and time in custody and not about subjects related to Plaintiff's allegations of liability against Individual Defendants; (5) Individual Defendants must complete the Rule 35 examination before their deadline for expert disclosures; and (6) should the Court allow Individual Defendants' expert to conduct various tests, it should similarly provide an opportunity for Plaintiff to do the same through his own expert rebuttal report.

Pl.'s Letter at 3.

In light of the intrusiveness of a court-ordered medical examination, courts have substantial discretion to shape the contours of such an examination. Fed. R. Civ. P. 35(a)(2); *see also Hughley*, 2021 WL 6655870, at *1 (collecting cases). As to Mr. Shipley's requested limitations #1 and #3, the interview may not be recorded (though Dr. Gaskell may of course take notes), and attendance will be limited to Mr. Shipley and Dr. Gaskell. *See McKisset v. Brentwood BWI One LLC*, No. WDQ-14-cv-1159, 2015 WL 8041386, at *3-*5 (D. Md. Dec. 4, 2015) ("The 'majority view' in the federal district courts is to exclude third-parties and recording equipment from Rule 35 examinations.") (quoting *Davanzo v. Carnival Cruise Lines, et al.*, No. 1:14-CV-20153-JAL, 2014 WL 1385729, at *4-5 (S.D. Fla. Jan. 14, 2014)). The Court rejects Mr. Shipley's request (#2) to prohibit Dr. Gaskell from conducting psychological testing; that will be left to the professional judgment of Dr. Gaskell. As for Mr. Shipley's request (#4) to limit the scope of Dr. Gaskell's questioning to "his claimed emotional injuries stemming from his prosecution, conviction, and time in custody and not about subjects related to Plaintiff's allegations of liability against Individual Defendants," Pl.'s Letter at 3, there does not appear to be any dispute. The examination, as Defendants request it, will be limited to "assess[ing] [Mr. Shipley's] claim that he suffers post-traumatic stress disorder and emotional distress as alleged in

his Amended Complaint and his Answers to Defendant LeRoy Stanton's First Set of Interrogatories." ECF No. 102 ("Defs.' Letter") at 1. Accordingly, that request (#4) is granted.

That leaves two questions with regard to timing. First, Mr. Shipley requests (#5) that any examination by Dr. Gaskell take place by January 22, the deadline for Defendants' Rule 26(a)(2) disclosures. ECF No. 99 at 1. Second, Mr. Shipley further requests (#6) that, if the Court orders his examination by Dr. Gaskell, Mr. Shipley be permitted to designate an expert to conduct an independent examination. Both requests are granted, and any report(s) must be produced consistent with the current scheduling order.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' request for an order permitting an examination by Dr. Steven Gaskell, Psy.D. is GRANTED, and such examination shall take place subject to the limitations set forth above.

Date:   January 11, 2024                                  /s/
                                                  Adam B. Abelson
                                                  United States Magistrate Judge