**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CLARENCE SHIPLEY, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:21-CV-03173-SAG |
| DEEMS MARTIN DISNEY, JR., et al., | * | |
| Defendants. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**DEFENDANTS' MOTION TO BIFURCATE DAMAGES FROM LIABILITY**

Now come Defendants, Edward Henneman Sr., Thomas Gerst, and LeRoy Stanton (hereafter "Defendants"), by and through undersigned counsel, and respectfully move this Court, pursuant to Federal Rule of Civil Procedure 42, for an order bifurcating the trial in this matter by separating the issues of liability from damages. For the reasons set forth below, Defendants submit that bifurcation is warranted to promote judicial economy, prevent unfair prejudice, and simplify the issues for trial.

**INTRODUCTION**

This motion is brought separate and independent from Defendants' Omnibus Motions in Limine filed in this matter. While Defendants' Motions in Limine addressed the admissibility of specific categories of evidence at trial, this motion focuses solely on the organization of the trial itself. Specifically, Defendants request that the Court exercise its discretion under Fed. R. Civ. P. 42(b) to order that the trial be conducted in two separate phases: first, the jury should determine the threshold question of whether Defendants are liable on the remaining claims of fabrication of evidence and failure to intervene; and second, only if the jury finds liability, the jury should consider damages.

As the Court is aware, the claims proceeding to trial have been significantly narrowed. Following the Court's Memorandum Opinion and Order on summary judgment (Dkt. Nos. 151, 153), the only remaining claims are against Defendants Henneman, Gerst, and Stanton as to fabrication of evidence and failure to intervene. The central factual question before the jury is whether any of the named Defendants deliberately fabricated Allan Scott's October 28, 1991 statement to police—a statement in which Scott implicated Plaintiff in a separate robbery on the evening of Kevin Smith's murder and was only used by the State at trial to rebut Plaintiff's alibi defense—and, if so, whether that deliberate fabrication caused a deprivation of Plaintiff's liberty. Bifurcating the trial will ensure that the jury's attention remains focused on these narrow liability questions without being unduly influenced by emotionally charged damages evidence.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Fed. R. Civ. P. 42(b). Notably, Rule 42(b) is disjunctive, meaning "[o]nly one of these criteria need be met to justify bifurcation." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 458 (D. Md. 2020) (citing *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996)). District courts have "broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused." *Id.* (quoting *Beasley v. Kelly*, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010)); *see also Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997) (decisions whether to bifurcate are reviewed for abuse of discretion).

**ARGUMENT**

**I.    The Issues of Liability and Damages Are Sufficiently Separable.**

The liability and damages issues in this case are legally and factually distinct. The liability phase requires the jury to determine two narrow questions: (1) whether any of the named Defendants deliberately fabricated evidence; specifically, Allan Scott's October 28, 1991 statement; and if so (2) whether such fabrication caused a deprivation of Plaintiff's liberty. The failure to intervene claim is derivative and similarly focused on whether any Defendant failed to intervene in the alleged coercion of Allan Scott.

By contrast, the damages phase will involve an entirely different category of evidence, including Plaintiff's emotional and psychological condition, the impact of his 27 years of incarceration, his reintegration into society, and potentially the financial resources available to satisfy a judgment. This evidence has no bearing on whether Defendants fabricated evidence or failed to intervene, yet it carries immense emotional weight that threatens to overwhelm the jury's ability to impartially evaluate the specific questions of liability. Because these two categories of evidence address fundamentally different inquiries, they are readily separable and well-suited for bifurcation under Rule 42(b).

**II.    Bifurcation Is Necessary to Prevent Unfair Prejudice to Defendants.**

The risk of unfair prejudice to Defendants from a unitary trial is acute. Plaintiff spent 27 years incarcerated before his conviction was vacated in 2018. In a single-phase trial, the jury would hear detailed testimony about the consequences of Plaintiff's incarceration, including his alleged anxiety, depression, and post-traumatic stress disorder, at the same time it is being asked to decide the narrow factual question of whether Defendants deliberately fabricated Allan Scott's statement over thirty years ago.

The emotional weight of this damages evidence would likely overwhelm the jury's ability to impartially evaluate the specific evidence of fabrication and causation. This danger is only compounded by the fact that the Parties have agreed to insulate the jury from emotionally charged and prejudicial material involving testimony related to any finding of Plaintiff's vacated criminal conviction. Defendants have further moved to exclude testimony regarding opinions and beliefs of Plaintiff's actual innocence, references to other wrongful convictions, and testimony about police misconduct unrelated to this case, all in recognition that such evidence is emotionally powerful yet irrelevant to the narrow claims at the liability phase of trial and threatens to prejudice Defendants unfairly. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert. denied*, 510 U.S. 915 (1993) (finding that the trial court abused its discretion in denying the motion to bifurcate where the jury heard highly prejudicial loss of consortium evidence irrelevant to Plaintiff's FELA claim).

Bifurcation provides the structural safeguard necessary to prevent this prejudice. By separating the damages phase from the liability determination, the Court ensures that the jury considers only the evidence relevant to each phase without being influenced by the emotional impact of evidence pertaining to the other.

## III.   Bifurcation Will Promote Judicial Economy.

Bifurcation will serve the interests of judicial economy in this case. If the jury returns a verdict in favor of Defendants on the liability claims, there will be no need to conduct a damages trial at all. This would spare the Court and the Parties the significant time and expense of presenting extensive damages evidence—including at least three separate expert witnesses (Drs. Gaskell, Rushing, and Steward) and testimony from at least three lay witnesses regarding Plaintiff's alleged damages, the impact of his incarceration, and his future needs—that would be rendered moot by a

defense verdict on liability. Bifurcation of this evidence would also save the time and expense of litigating thorny evidentiary issues such as the admissibility of Plaintiff's juvenile record.

The liability issues in this case are narrowly focused on the actions of three Defendants with respect to a single witness statement made on October 28, 1991. A liability-only trial can be conducted efficiently and expeditiously, with the evidence concentrated on the circumstances surrounding Allan Scott's statement and the conduct of Defendants. By contrast, a unitary trial would require the jury to absorb a vast amount of damages evidence alongside the liability evidence, increasing the length and complexity of the proceeding. Bifurcation avoids this inefficiency by ensuring that damages evidence is presented only if it becomes necessary.

The Court has already recognized the utility of bifurcation in this case. On December 22, 2022, the Court bifurcated Plaintiff's *Monell* claim against the Baltimore Police Department from the claims against the individual Defendants, precisely to prevent undue complexity and prejudice. *See* Dkt No. 65. The same reasoning applies here: just as the *Monell* claim was appropriately separated to ensure focused and fair proceedings, so too should the damages phase be separated from the liability phase for the same reasons.

## IV.    Bifurcation Will Simplify the Issues for the Jury.

A unitary trial would require the jury to simultaneously process two categories of evidence that serve fundamentally different purposes. On the one hand, the jury would need to carefully evaluate the specific factual circumstances surrounding Allan Scott's October 28, 1991 statement and the conduct of each named Defendant. On the other hand, the jury would be confronted with extensive and emotionally compelling evidence of the harm Plaintiff suffered during 27 years of incarceration.

Presenting these issues together risks confusing the jury by conflating the question of what happened with Allan Scott's statement with the question of what harm Plaintiff suffered. As Defendants argue in their Motions in Limine, there is a substantial risk in this case that testimony about the impact of Plaintiff's incarceration will divert the jury's attention from the narrow questions it must decide—namely, whether Defendants deliberately fabricated evidence and whether that fabrication caused Plaintiff's loss of liberty—and toward the broader, emotionally charged question of the consequences of Plaintiff's conviction. Bifurcation eliminates this risk by presenting the jury with a clean and focused set of issues at each phase. During the liability phase, the jury can devote its full attention to evaluating the credibility of the witnesses and the evidence surrounding the alleged fabrication. Only if the jury finds liability will it then turn to the separate question of damages, at which point the damages evidence can be presented in its proper context without contaminating the liability determination.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order bifurcating the trial by separating the issues of liability from damages. In the alternative, should the Court decline to bifurcate liability from all damages, Defendants respectfully request, consistent with their Omnibus Motions in Limine, that the Court bifurcate the punitive damages phase from the liability and compensatory damages phases of trial.

DATE: March 2, 2026

Respectfully Submitted,

*/s/ Perry Wasserman*
Shneur Z. Nathan, # 20707
Avi T. Kamionski, # 20703
Christine Goo, # 30378
Kimberly Mann, # 30602
Ephraim R. Siff, # 20761

Perry Wasserman, # 31209
NATHAN & KAMIONSKI LLP
575 South Charles Street, Suite 402
Baltimore, MD 21201
410-846-0061
pwasserman@nklawllp.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on March 2, 2026, I caused the foregoing

document to be electronically filed with the Court's CM/ECF system, which will send an electronic

copy of the same to all counsel of record.

*/s/ Perry Wassermcp'''''''''''''''''''''''''''''''''''*

Perry Wasserman, #31209
Shneur Z. Nathan, #20707
Avi T. Kamionski, #20703
Christine Goo, #30378
Ephraim R. Siff, #20761
Kimberly Mann, #30602
NATHAN & KAMIONSKI, LLP
575 South Charles Street, Suite 402
Baltimore, MD 21201
pwasserman@nklawllp.com

*Attorneys for the Defendants*