**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CLARENCE SHIPLEY,     *

   Plaintiff,      *

  v.          *   Case No. 1:21-CV-03173-SAG

DEEMS MARTIN DISNEY, JR., et al., *

   Defendants.    *

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' OMNIBUS MOTIONS IN LIMINE**

Now come Defendants, Thomas Frank Gerst, Edward Nelson Henneman Sr., and LeRoy Stanton, by and through undersigned counsel, and submit this Reply to Plaintiff's Opposition to Defendants' Omnibus Motions in Limine (Dkt. No. 182). Defendants reply only to Defendants' Motions in Limine Nos. 1, 3, 5, 7, 10, 11, and 12, to address new arguments and/or clarify any legal or factual issues erroneously asserted by Plaintiff in his Opposition. Defendants do not submit reply briefing as to Defendants' Motions in Limine Nos. 2, 4, 6, 8, 9, 13, 14 and 15. For those Motions in Limine, Defendants stand on the arguments made in their Omnibus Motions in Limine (Dkt. No. 175).

**I.  Defendants' Reply in Further Support of Motion In Limine No. 1**

Defendants do not dispute that Plaintiff, as a party to this action, may testify in his own words that he did not commit the murder of Kevin Smith. Defendants' Motion in Limine No. 1 is not intended to silence Plaintiff's own account of the events underlying this case. Rather, the Motion seeks to prevent the trial from devolving into a wholesale re-litigation of Plaintiff's criminal case through the testimony of additional witnesses called to opine on or bolstering a claim of actual innocence. The claims proceeding to trial are narrowly defined: a fabrication of evidence

claim and a failure to intervene claim. The central question for the jury is whether Defendants deliberately fabricated Allan Scott's October 28, 1991 statement and whether the claimed fabrication caused a deprivation of Plaintiff's liberty. Plaintiff's actual innocence is not an element of either claim. Permitting witnesses to offer opinions or beliefs as to Plaintiff's innocence would inject an emotionally charged but legally irrelevant issue into the trial, risking precisely the prejudice, confusion, and waste of time that Fed. R. Evid. 401, 402, and 403 are designed to prevent. Moreover, the Parties have already agreed to a stipulation that largely removes and sanitizes this issue at trial. *See* Dkt. No. 178 at 9. Permitting lay witnesses to testify that they believe Plaintiff is innocent, or that others share that belief, would circumvent the purpose of this stipulation by introducing the same category of barred evidence through a different medium.

## II.      Defendants' Reply in Further Support of Motion In Limine No. 3

Plaintiff opposes Defendants' Motion in Limine No. 3, which seeks to bar purported evidence that the City of Baltimore will indemnify Defendants. Dkt. No. 182 at 12; Dkt. No. 183, *generally*. Separately, Plaintiff also moved in limine for permission to affirmatively introduce this very evidence. Dkt. No. 174 at 5. Plaintiff also asks that the Court introduce the specter of indemnification to the jury during voir dire by asking the following question: "Would anyone have difficulty awarding damages because they believe 'taxpayers end up paying' in these kinds of cases?" Dkt. No. 172 at 3. It is evident, therefore, that Plaintiff seeks to make "who will pay" a central theme of his case, and this only confirms the need for the relief Defendants seek.

Stripped to its essence, Plaintiff asks this Court for blanket pre-trial approval to introduce evidence that the City of Baltimore will indemnify Defendants—evidence he concedes is only relevant, at most, to punitive damages—and to do so from the very first moment of trial while the jury receives evidence relating to liability. That is precisely the type of irreversibly prejudicial,

bell-ringing evidence that Fed. R. Evid. 403 and 411 are designed to keep from juries. If such evidence of indemnification is permitted at all, bifurcation of the punitive damages phase is the proper and equitable remedy.

As a threshold matter, Plaintiff overstates his supposition that indemnification is admissible even for punitive damages purposes. The firmly established rule is that, generally, evidence of insurance or indemnification is *inadmissible* at trial. Fed. R. Evid. 411; *See also Wallace v. Poulos*, 861 F. Supp. 2d 587, 601 n.13 (D. Md. 2012) (analogizing inadmissibility of insurance policies to indemnification agreements). However, in the narrow circumstance when "a defendant offers testimony of an inability to pay damages, a plaintiff will be permitted to introduce indemnification evidence." *Hicks v. Ferreyra*, 582 F. Supp. 3d 269, 290 (D. Md. 2022), *aff'd*, 64 F.4th 156 (4th Cir. 2023). S*ee also Jones v. Allen*, 2016 WL 9443772, at *8 (D. Md. Oct. 24, 2016) ("should Defendants open the door by offering testimony of their own inability to pay a punitive damages award, Plaintiff will be permitted to introduce evidence of any indemnification available.")

In this case, Defendants have not yet placed their financial resources at issue and have not offered any testimony regarding an inability to pay a punitive damages award. Accordingly, the door has not been opened, and indemnification evidence remains inadmissible. Plaintiff's Motion in Limine seeks to circumvent this gatekeeping condition entirely by obtaining pre-trial permission to introduce the evidence regardless of whether Defendants ever raise their financial condition. Plaintiff's opposition to Defendants' Motion in Limine fails to address this controlling limitation at all.

Plaintiff separately opposes Defendants' alternative request to bifurcate the punitive damages phase of trial. Plaintiff's principal argument against bifurcation is one of efficiency. He contends that the only evidence strictly relevant to punitive damages is "the bare fact that the

Baltimore Police Department will indemnify Defendants if there is a money judgment against them" and that holding "an entire separate trial" for "one single sentence of evidence" is a waste of resources. Dkt. No. 183 at 10. The fact that the City of Baltimore *may* indemnify Defendants could be "one single sentence of evidence," depending on how Plaintiff would attempt to get it into evidence, but its immense significance cannot be overemphasized. In fact, it is so significant and outcome determinative that Plaintiff not only seeks permission in limine to introduce it, Plaintiff goes so far as to introduce it to the jury venire in a voir dire question. Who will pay the money damages should never be a question for a jury to consider, especially while determining whether there is liability in the first place.

Plaintiff argues that it would be inconvenient to have to call some witnesses twice if this trial were bifurcated. "Convenience" is not the only consideration in a decision to bifurcate a trial, and prejudice to one party overshadows any argument of convenience. To the contrary, this Court specifically held that, "a trial must remain fair to both parties, and . . . considerations of convenience **may not** prevail where the inevitable consequence to another party is harmful and serious prejudice." *Tserkis v. Baltimore Cnty.*, 2021 WL 3129325, at *25 (D. Md. July 23, 2021) *quoting Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1445 (4th Cir. 1993) (emphasis added).

### III.    Defendants' Reply in Further Support of Motion In Limine No. 5

Plaintiff concedes that a violation of a police department's internal policies, in and of itself, does not prove a constitutional violation for which a plaintiff could recover under Section 1983. Dkt. No. 182, at 14. For that reason alone, Defendants' motion to bar Plaintiff from making any such argument should be granted.[1]

---

[1] A jury instruction on this matter, as Plaintiff suggests, will not suffice. The prejudice from introducing General Orders evidence cannot be cured by instruction. If the jury hears that Defendants violated their own department's rules during Scott's interrogation, there is a substantial risk that the jury will place undue weight on those violations and equate them with constitutional wrongdoing, regardless of any instruction.

Nonetheless, Plaintiff argues that a policy violation is "relevant" to determining whether a constitutional violation occurred and explains that his police-practices expert, Stanford O'Neal Franklin, will testify that "Defendants violated policy during their interrogation of Scott." Dkt. No. 182 at 14. Plaintiff intends to use BPD General Orders as a standard against which to measure Defendants' conduct, which effectively converts internal department rules into a standard of care—something they are not.

Plaintiff's reliance on *Wyatt v. Owens*, 317 F.R.D. 535 (W.D. Va. 2016) proves this very point. In *Wyatt*, an excessive force case, the court allowed the police practices expert to testify at trial because excessive force claims are analyzed using an "objective reasonableness" standard, which may be determined by looking at compliance with training and established policy. 317 F.R.D. at 542. No such standard applies here. Plaintiff does not need to introduce BPD General Orders to argue fabrication. A factfinder's determination and analysis of excessive force is galactically different than one for fabrication. With excessive force, there is some force that is permissible given the circumstances in a particular situation. The level of force must be proportionate to the events that have occurred. *See Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) ("The better way to assess the objective reasonableness of force is to view it in full context, with an eye toward the proportionality of the force in light of all the circumstances.") Police policy and general orders can help a jury determine what is or is not an appropriate level of force. *See Wyatt*, 317 F.R.D. at 543. The issue of fabrication is much clearer cut. A member of law enforcement cannot coerce a false and fabricated statement from a witness. There is no general order or BPD policy that would assist the jury in better understanding that the Defendants in this case should not have caused Allan Scott to provide a fabricated statement. Plaintiff's attempt to introduce this evidence is nothing more than a backdoor attempt to argue, through expert testimony

no less, that policy violations equal constitutional violations, a proposition Plaintiff concedes is not true.

### IV.    Defendants' Reply in Further Support of Motion In Limine No. 7

Plaintiff's Opposition mischaracterizes the scope and intent of Defendants' Motion in Limine No. 7. Defendants do not seek to prevent Plaintiff from proving his fabrication of evidence claim. Rather, Defendants seek to preclude Plaintiff from arguing or eliciting testimony that any police officer committed perjury or provided misleading testimony at Plaintiff's criminal trial or during related criminal proceedings, a theory for which Plaintiff has adduced *no* evidence during discovery and which, in any event, is barred by the doctrine of immunity. It is well established that witnesses in a criminal trial, including law enforcement officers testifying for the prosecution, enjoy absolute immunity from subsequent civil liability under 42 U.S.C. § 1983 based on their testimony. *See Briscoe v. LaHue*, 460 U.S. 325 (1983); *Smith v. McCarthy*, 349 F. App'x 851, 858 n.10 (4th Cir. 2009); *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). This immunity reflects the deeply rooted public policy of encouraging witnesses to testify freely without fear of subsequent civil suit. Plaintiff cannot be permitted to circumvent this immunity by repackaging allegations of perjury as evidence relevant to his fabrication claim.

Critically, no evidence developed during the course of discovery in this case establishes that any Defendant testified falsely or provided misleading testimony in Plaintiff's underlying criminal proceedings. Indeed, none of the remaining Defendants officers even testified at Plaintiff's criminal trial. Plaintiff's fabrication claim is predicated on the allegation that Defendants coerced Allan Scott into providing a false statement on October 28, 1991, conduct that is distinct from, and antecedent to, any trial testimony. Allowing Plaintiff to argue or, more to the point, invite an inference that Defendants also perjured themselves at trial would improperly

expand the scope of the case beyond the claims this Court has permitted to proceed, confuse the issues before the jury, and subject Defendants to the very prejudice that absolute witness immunity is designed to prevent. Even if such evidence possessed some marginal relevance, it should be excluded under Fed. R. Evid 403 as substantially more prejudicial than probative and under Fed. R. Evid. 404(b) as inadmissible propensity evidence suggesting that officers who allegedly fabricated a witness statement must also have lied on the stand.

V.      **Defendants' Reply in Further Support of Motion In Limine No. 10**

In Motion in Limine No. 10, Defendants seek to bar Plaintiff from using the prejudicial terms "code of silence," "blue wall," "thin blue line", and any other similar generalizations or terms implying that police officers generally, lie or cover up for each other. Dkt. No. 175 at 21-22. In *Ratliff v. City of Chicago*, 2012 WL 5845551 (N.D. Ill. Nov. 19, 2012), the court held that "generalized allegations—separate and apart from what may be true of the officers named as [d]efendants here—are not helpful and are akin to impermissible propensity evidence" and barred plaintiff from introducing evidence or arguing that police officers "typically adhere to a 'code of silence' or 'blue wall' or seek to cover up misconduct in order to protect fellow officers." *Id*.

In their motion, Defendants cited two persuasive cases where courts have granted similar motions. Plaintiff attempts to distinguish this case by pointing out that this case involves a claim of failure to intervene whereas the two cases cited by Defendants did not involve such claims. This is a distinction without a difference, and those courts' reasoning remain persuasive.

First, in *Bennett v. Thomas*, 2014 WL 13110820 (N.D. Ill. Jan. 16, 2014), which is an excessive force case, the court held that although the plaintiff "may present evidence that ***these*** defendants are biased towards one another or are attempting to cover up the (allegedly) wrongful conduct in ***this*** case . . . he may not use the terms 'code of silence' or 'blue wall' as they are unduly

prejudicial." *Id*. at \*10. (emphasis added). Terms such as 'code of silence' or 'blue wall' obviously connotate a general practice among police to cover up for each other, and in this case, that connotation is without basis in evidence and is unduly prejudicial.

Defendants acknowledge that Plaintiff can attempt to argue that the individual Defendants *in this case* are biased towards one another and attempted to cover for each other *in this case* but what Defendants seek (consistent with what the court in *Bennett* granted) is an order barring the use of unduly prejudicial and inflammatory terminology that insinuates that there exists among police officers generally, a "code of silence."[2] Plaintiff should not be permitted to introduce any evidence or make argument that there exists a "code of silence" among police officers generally. Any such inference beyond the facts of this case are irrelevant and unduly prejudicial. This is especially true because the *Monell* claim was bifurcated and is not before the jury. To allow the Plaintiff to argue that there exists among police officers generally a "code of silence" or "blue wall" is to argue that these officers acted in conformity with an illegal pattern or practice, an allegation that has not been generated by the evidence, is not before this jury, and would be unduly prejudicial even if it was.

In the second case cited, *Shaw v. City of New York*, 1997 WL 187352 (S.D.N.Y. Apr. 15, 1997) the defendants sought to preclude the plaintiff from introducing an investigative report that concluded that there was "a police 'code of silence' that causes certain officers to lie to protect fellow officers." *Id*. at \*5. Plaintiff is correct that *Shaw* did not involve a failure to intervene claim. Nevertheless, the court noted that there was no *Monell* claim in that case and evidence of a "code of silence," while possibly admissible in a *Monell* case, was not admissible in that case where there

---

[2] Although Plaintiff may attempt to argue this point, Defendants assert that Plaintiff adduced no evidence in discovery to support such a contention.

was no *Monell* claim. *Id*. at *9. The same is true in this case. There is no *Monell* claim before this jury and evidence or argument about the existence of a "code of silence" or "blue wall" where officers cover up for each other is unduly prejudicial.

Those two cases are not outliers. *See e.g., Nabors v. Tincher*, 2024 WL 3445501, at *6 (S.D.W. Va. July 17, 2024) (granting a motion in limine barring "any contention that there was a 'code of silence,' 'blue wall,' or the like describing situations in which police generally cover for their colleagues[.]"); *Davis v. City of New York*, 296 F.R.D. 127, 130 (E.D.N.Y. 2013) (granting "Defendants' motion to preclude the plaintiff from arguing or eliciting testimony regarding a purported "Blue Wall of Silence" or "Code of Silence[.]"); *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1029 (N.D. Ill. 2011) (granting motion in limine that plaintiff "may not use the term 'code of silence' or 'blue wall' as these terms are unduly prejudicial… [and] may not introduce evidence that law enforcement officers typically adhere to a 'code of silence' or 'blue wall' or seek to cover up misconduct in order to protect fellow officers.")

As further example, in *Moore v. City of Chicago*, 2008 WL 4549137 (N.D. Ill. Apr. 15, 2008), the court also considered this motion in limine and held that a plaintiff "may elicit such evidence to develop the theme that a code of silence existed among ***these particular*** officers in ***this particular*** incident[,]" but barred "generalized evidence of an alleged police code of silence." *Id*. at *6. (emphasis added). Here too, Plaintiff is free to present evidence that ***these*** three officers failed to intervene in ***this*** instance of misconduct. However, Plaintiff should not be permitted to introduce evidence that other BPD officers or police officers in general cover for each other. *See also Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) ([P]laintiffs may not introduce generalized evidence of a "code of silence" but… may introduce evidence that ***the officers involved*** in the events underlying the complaint adhered to a 'code of silence' regarding

***the alleged violation*** of the plaintiffs' constitutional rights.") (emphasis added); *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003) ("[T]he phrase 'code of silence' is unduly prejudicial and may not be used at trial.").

In *Maldonado v. Stinar*, 2010 WL 3075680 (N.D. Ill. Aug. 5, 2010), the district court likewise held that "generalized allegations [of] a police 'code of silence' or 'blue wall,'" are no more admissible than a generalized assumption that "all mechanics, when they have the opportunity, assess overcharges for unnecessary repairs; that all politicians, when the public's back is turned, accept bribes; and that all taxpayers, when they think they can get away with it, cheat on their taxes—and no one ever tells." *Id*. at \*4, *quoting Sanders v. City of Indianapolis*, 837 F. Supp. 959, 963 (S.D.Ind.1992). The court concluded that "[i]n a court of law… justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices" and allowed Plaintiff to elicit testimony of police officers' bias only "among ***these particular*** officers in ***this particular*** incident." *Id*. (emphasis in the original).

Plaintiff claims that he must use terms such as "code of silence," "blue wall," or "thin blue line" because they are "the most widely understood vocabulary" to describe the relationship between police officers. Dkt. No.182 at 18. That is part of the reason Defendants so strongly object to the use of this language. Those terms are loaded with superfluous meaning and imply an illicit agreement that would reach far beyond Defendants and would only serve to unfairly impugn these officers. Plaintiff's intended broad accusations go far beyond the claims in this case, are without basis in the evidence adduced in discovery, and are irreparably prejudicial. Any probative value of the use of those terms, however slight, is substantially outweighed by the unfair prejudice that comes with it.

## VI.    Defendants' Reply in Further Support of Motion In Limine No. 11 and 12

In his Opposition to Defendants' Motion in Limine No. 11, Plaintiff does not contest the core relief Defendants seek, conceding that the Court should "conditionally grant" Defendants' request to preclude testimony that he suffers from a diagnosed mental-health disorder. The remaining issue, however, is a glaring carve out that Plaintiff seemingly proposes. Namely, that he or other lay witnesses can testify that Plaintiff's "symptoms" were caused by his incarceration.

In his Amended Complaint, Plaintiff alleges that, as a result of his incarceration, he suffers from "anxiety, depression, and posttraumatic stress disorder." Amended Complaint, Dkt. No. 27 at ¶ 163. Plaintiff now clarifies that he "does not plan to introduce evidence for its truth from any lay witness that he suffers from a diagnosed mental-health condition," but explains that he seeks merely to use his own testimony, and that of other lay witnesses, to describe his symptoms. Dkt. No. 182 at 19. This means that one of two things is true. Either Plaintiff will, on his own or through other lay witnesses, opine that the symptoms he claims to experience are, in fact, a result of his incarceration or Plaintiff will, on his own or through other lay witnesses, simply narrate his purported symptoms and let the jury guess—without the benefit of any expert testimony in his case-in-chief—that the symptoms are the result of his incarceration and are not attributable, in whole or in part, to any of Plaintiff's other life circumstances or traumas that he suffered. He should not be permitted to do either.

In considering Defendants' Rule 35 motion, then-Magistrate Judge Abelson held that the specific conditions at issue in this case—anxiety, depression, and post-traumatic stress disorder—are "distinct psychological disorders with identifiable clinical meanings and treatment protocols." Dkt. No. 104 at p. 7.  In *Ricks v. Abbott Laboratories*, 198 F.R.D. 647 (2001), this Court explained that "there is a difference between more serious emotional distress that might be diagnosed and

treated as a disorder by a psychiatrist and the less serious grief, anxiety, anger, and frustration that everyone experiences when bad things happen." *Id.*, at 649. *Ricks* further held that although "plaintiffs may recover damages for either type of distress . . . a defendant cannot require a plaintiff to submit to a mental examination when the plaintiff alleges only the latter kind of emotional distress." *Id*. By granting the Rule 35 motion, Judge Abelson considered Plaintiff's symptoms to be the former sort of emotional injury that requires diagnosis and treatment "as a disorder by a psychiatrist" rather than mere emotional distress commonly understood by lay people. Dkt. No. 104 at p. 5, *quoting Ricks*, 198 F.R.D. at 649.

In opposing Defendants' request for a Rule 35 examination, Plaintiff argued that the conditions of which he suffers are "straightforward and easy to understand" because they are "obvious" after 27 years of wrongful incarceration, but Judge Abelson squarely rejected that argument as a matter of law. *See* Dkt. No 103 at p. 2.; Dkt. No. 104 at p. 7. If the clinical nature of these conditions is not "straightforward" enough to avoid a Rule 35 examination, it is not "straightforward" enough to permit a lay witness to describe them symptom-by-symptom without expert foundation. Plaintiff should not be permitted to now take a position before the jury that was squarely rejected at the discovery stage. Judge Ableson points to Plaintiff's very allegation that he suffers from "flashbacks, night terrors in which he wakes up screaming, anxiety, depression, and posttraumatic stress disorder." Dkt. No. 104 at 5, *quoting* Amended Complaint, Dkt. No. 27 at ¶ 163. Those symptoms are not straightforward common emotional distress but are indicative of a diagnosable condition outside the knowledge of a lay witness, the causation of which must be assigned by expert testimony.

Having Plaintiff parade symptoms before the jury—fatigue, nightmares, hypervigilance, social withdrawal, or any other clinical marker of PTSD, depression, or anxiety—without any

context is a transparent effort to force the jury to make an inferential leap. The jury would have no way to evaluate whether the "symptoms" that Plaintiff describes actually constitute PTSD, depression, or anxiety, and, more to the point, whether they are attributable to his incarceration and thereby to Defendants' alleged conduct or arise from other causes or traumatic events in Plaintiff's life, absent expert guidance.

Plaintiff selectively quotes from *Price v. City of Charlotte, N.C.*, 93 F.3d 1241 (4th Cir. 1996) declaring that a "survey of the case law reveals that a plaintiff's testimony, standing alone, may support a claim of emotional distress precipitated by a constitutional violation." *Id*. at 1251. However, Plaintiff neglects to quote the following paragraph of *Price* where the Court explained that "while a plaintiff's testimony, standing alone, can support an award of compensatory damages, the evidence of the emotional distress must be demonstrable, genuine, and ***adequately explained***." *Id*. at 1251-52 (emphasis added). More significantly, Plaintiff fails to point out that the court in *Price* held that the plaintiffs failed to sufficiently prove how the "alleged distress manifested itself." *Id.*, at 1254–55. The court in fact reversed the award of compensatory damages because the plaintiffs' account of their emotional distress was insufficient. *Id*. Moreover, when describing the type of common emotional distress that a lay person can recount, the *Price* court was referencing the type of common emotional distress without the severe flashbacks, night terrors and PTSD of which Plaintiff here complains. In this case, Plaintiff alleges clinical symptoms but chose not to designate an expert to testify in his case-in-chief and absent expert testimony, Plaintiff cannot adequately explain his mental condition nor properly attribute it to his incarceration.

Likewise, Plaintiff cites *Bryant v. Aiken Reg'l Med. Ctr., Inc.*, 333 F.3d 536 (4th Cir. 2003) for the proposition that "[l]ay-witness testimony 'can support an award of compensatory damages for emotional distress.'" *Id*. at 546. However, in that case too, the court followed up stating that

13

"[t]he plaintiff must also 'show a ***causal connection*** between the violation and her emotional distress.'" *Id*. at 547 *quoting Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 653 (4th Cir. 2002) (emphasis added). Here, Plaintiff cannot bridge the causal connection between the serious symptoms that he alleges and the incarceration that he experienced, without expert testimony.

Plaintiff ignores the multitude of precedential and persuasive cases that Defendants cited in their Motion in Limine that all stand for the proposition that causation of symptoms can only be properly attributed by expert testimony. Plaintiff's concession that he will only describe his symptoms without referencing any concrete diagnosis or causation not only fails to cure the deficiency of his evidentiary plan, but it exacerbates it. What Plaintiff proposes to do is enumerate all of his symptoms and explicitly or implicitly assign them to his incarceration. Because he is not an expert and chose not to retain one to present his case-in-chief, Plaintiff cannot demonstrate a causal link between his incarceration and the symptoms. Without the causal link between his symptoms and his incarceration, the presence of his symptoms is rendered not "of consequence in determining the action" and if they are not relevant to his claims, his symptoms are irrelevant to this case and should be excluded. *See* Fed. R. Evid. 401.

Plaintiff's opposition to Defendants' Motion in Limine No. 12 relating to future damages is similarly unavailing. He asserts that he "can competently talk about his current pain and suffering and his views about whether they will continue," and that "[a]ny person can competently describe whether they will seek and need counseling moving forward." Dkt. No. 182 at p. 20. This argument conflates permissible lay testimony with the type of medical and psychological prognostication that requires expert foundation.

Defendants do not seek to prevent Plaintiff from testifying in general terms that he continues to suffer emotional symptoms. What Defendants seek to bar is specific testimony about future medical, psychological, or therapeutic needs; that is, testimony that amounts to lay opinion on clinical prognosis. That limitation is squarely supported by Fed. R. Evid. 701 and 702.

Respectfully Submitted,

/S/ Shneur Z. Nathan
Shneur Z. Nathan, # 20707
Avi T. Kamionski, # 20703
Christine Goo, # 30378
Kimberly Mann, # 30602
Ephraim R. Siff, # 20761
Perry N. Wasserman, # 31209
NATHAN & KAMIONSKI, LLP
575 South Charles Street, Suite 402
Baltimore, MD 21201
snathan@nklawllp.com
*Attorneys for the Defendants*