

# NATHAN & KAMIONSKI LLP

EPHRAIM R. SIFF
*Partner*
esiff@nklawllp.com
**T:** (410) 630-4611
**F:** (410) 705-4379

June 19, 2026

**FILED VIA ECF**

The Honorable Stephanie A. Gallagher
United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

   Re: *Shipley v. Henneman, et al*., Case No. 1:21-CV-03173-SAG

Dear Judge Gallagher:

   In accordance with the Court's instructions at the June 11, 2026 pretrial conference/motions hearing and the Court's June 12, 2026 Letter Order (Dkt. No. 194), Defendants Thomas Frank Gerst, Edward Nelson Henneman Sr., and LeRoy Stanton ("Defendants") write to respond to Plaintiff's June 16, 2026 letter (Dkt. No. 198).[1]

   In his letter, Plaintiff contends that during the causation/materiality phase of a bifurcated trial, he "intends to have an oral reading of the relevant portions of the transcript. Two individuals (possibly actors) will read the relevant portions of the transcript." *Id*. at 8. Plaintiff indicates he will "omit from the reading any objections made and the court's response, since the original trial jury should not have considered that information. Shipley also intends to use a short summary of some witnesses—mostly, the alibi witnesses—if Defendants agree. If Defendants do not agree, he will also read in their testimony."[2] *Id*. Plaintiff then details in his letter the pages of transcripts he intends to read in, which is a wholesale recitation of the 1992 criminal trial, approximately 300 pages, save opening statements and one State's witness, Forensic Technician David Williams, who Plaintiff maintains "didn't add anything meaningful to the trial, and reading his testimony would waste the jury's time."[3] *Id*. at 8-9. With regard to admissibility, Plaintiff's position is, "[i]n a

---

[1] At the June 11, 2026 hearing, the Court directed Plaintiff to provide Defendants the testimony of "the deceased witnesses" that Plaintiff intends to introduce. *See* Ex. A, Pretrial Conference – Motions Hearing Tr., June 11, 2026 at 49:2-8.  Plaintiff responded, "We'll get you that, we'll get you the page lines and also get you the law about why we believe it is admissible as non-hearsay." *Id*. at 49:14-16. Plaintiff has provided no law explaining why the assertions he intends on introducing are admissible as non-hearsay.

[2] Plaintiff asks Defendants to agree to "a short summary of some witnesses," but he has not provided such summary or even indicated which witness testimony he would summarize, and trial is rapidly approaching.

[3] Defendants disagree with Plaintiff's position. If Plaintiff is permitted to read in the entirety of the 1992 trial, Technician Williams's testimony would provide the 2026 jury with important context and allow them to see the crime scene photos that were admitted into evidence. *See* in*fra*, I.

bifurcated trial, none of this testimony would come in for its truth. It would thus not be hearsay.[4] The testimony would come in for its effect on the original jury, which is the relevant inquiry for Scott Testimony Theory of Causation." *Id*. at 8.[5]

## I.    PLAINTIFF'S WHOLESALE RECITATION OF THE 1992 TRIAL WOULD CONFUSE THE ISSUES AND MISLEAD THE JURY.

As a threshold matter, Defendants concede *some*, but certainly not all, of the transcript from Plaintiff's 1992 criminal trial could be read in during this trial, if, as Plaintiff contends, he is not offering such statements for the truth of the matter, with one significant exception, as detailed below. *See infra*, II. However, the admission of the trial transcript in the wholesale manner Plaintiff proposes would confuse the issues and mislead the jury as to both the facts and applicable law and would thus unfairly prejudice Defendants and should be limited pursuant to Fed. R. Evid. 403.

Defendants note they are constrained in their response because, despite the Court's instructions, Plaintiff has not provided Defendants with the actual lines they intend on introducing. Indeed, the only redactions to the 1992 trial transcript appended to Plaintiff's letter appear to be related to private discussions between the trial court and the parties. Several questions remain about Plaintiff's presentation of evidence, including whether Plaintiff is omitting the following: all objections and court rulings, rulings the 1992 jury was obliged to follow, the court's remarks to the jury during the presentation of evidence, and trial exhibits that were published to the jury.[6]

Defendants have also identified passages within Plaintiff's excerpts that contain hearsay within hearsay that should not be read to the 2026 jury. Defendants will move to exclude such portions if Plaintiff intends on reading in this testimony. Additionally, Defendants object to Plaintiff's reading in of the 1992 jury instructions. They have no relevance and will confuse the jury.

---

[4] Plaintiff adds "during the second phase of the trial, Shipley would need to introduce some of the prior testimony for its truth under Federal Rule of Evidence 804(b)(1)." Dkt. No. 198 at 8. Defendants contest that any of Det. Brown's hearsay testimony is admissible under Rule 804(b)(1), and Plaintiff fundamentally mischaracterizes the holding in *McPherson v. Patton*. *See infra*, III.

[5] Although Plaintiff now seeks to introduce significantly more testimony than that of the "deceased witnesses" (Det. Brown and Gene Smith), his position that all 1992 testimony is admissible as non-hearsay is consistent with his earlier representations to Defendants. *See* Ex A, Pretrial Conference – Motions Hearing Transcript, June 11, 2026 at 49:15-16. *See also Id*. at 32:16-21 ("we haven't identified exactly the portions we intend to use, but I did explain, just by way of perhaps a preview, that we intend to introduce the portions that we do intend to use as non-hearsay. That is, the effect on the hearer, the hearer here being the jury. And obviously not for their truth."). Likewise, Plaintiff wrote to defense counsel that "we are offering the 1992 Shipley trial testimony of Brown and Smith for its effect on the hearer (*i.e.*, the jury)—not its truth." *See* Ex. B, June 10, 2026 email from K. Flowers to C. Goo. Plaintiff now asserts that some of this testimony will be offered for its truth in a subsequent phase.

[6] Plaintiff has not provided Defendants a copy of the 14 exhibits identified within the trial record, and his letter is silent on this important topic, including whether the 2026 jury would access the exhibits the 1992 jury received and considered.

NATHAN &
KAMIONSKI LLP

II.    **DESPITE PLAINTIFF'S ASSERTION, DETECTIVE DAVID BROWN'S 1992 CRIMINAL TRIAL TESTIMONY IS BEING OFFERED AS SUBSTANTIVE EVIDENCE, FOR THE TRUTH OF THE MATTER, AND NOT MERELY FOR ITS EFFECT ON THE 1992 JURY.**

### A.    The Operative Facts.

On October 28, 1991, three days after the Smith murder, Allan Scott was arrested for an auto theft. During his post-arrest interview, Scott told at least one of the Defendants that on October 25, 1991, shortly before the Smith murder and in the same vicinity of the murder, Plaintiff approached him, brandished a handgun and announced a robbery. Scott told police he hopped a fence and ran away.[7] Scott's tip was then forwarded to the lead investigator assigned to the Smith murder, Det. David Brown. Det. Brown spoke to Scott and Scott told him the same thing. Based on the similar *modus operandi*, and with Plaintiff in the vicinity near the time of the murder, Det. Brown thereupon created a photo array, which included Plaintiff's photograph and photos of five other individuals, and presented the array to Gene Smith who identified Plaintiff as the shooter. Plaintiff is suing Defendants for fabrication (by coercion) of Scott's statement. The crux of Plaintiff's fabrication claim is that Defendants coerced Scott into making a false statement and that "coerced/fabricated statement" was essential to Det. Brown's creation of the photo array that was presented to Gene Smith.[8]

### B.    Det. Brown's Trial Testimony Was That, Based On What Scott Told Him, He Created A Photo Array That Included Shipley.

At the 1992 trial, the State called Det. Brown in its case-in-chief. Det. Brown testified that on the Monday following the murder (October 28, 1991), "I was contacted by Officer Heneman [*sic*] of the Southern District, who informed me he had arrested a young man for a series of thefts and the young man indicated to him he had knowledge, he may have knowledge of the homicide that occurred in Cherry Hill." Ex. C, Trial Tr., June 11, 1992, 51:22-52:2. Det. Brown testified that the young man was named "Allen Paul Scott." *Id*. at 52:4. Det. Brown further testified, that he spoke to Scott that day and based on what Scott told him, "I obtained a photo of a young man with a nickname of Scooter." *Id*. at 52:22-23. Brown continued, "I assembled a photo line-up card and showed it to the victim's brother, Edward ["Gene"] Smith. *Id*. at 53:4-5. Det. Brown testified that he showed Gene Smith the photo array that included Plaintiff and "[Gene Smith] looked at all the photographs and pointed to the top left one and said that's him right there, looks just like him, never forget that face." *Id*. at 58:22-25. Det. Brown stated that Gene Smith identified Plaintiff's photograph in "[a] matter of seconds." *Id*. at 59:11. As best as Defendants can discern, the testimony Plaintiff now seeks to admit is Det. Brown's trial testimony that he relied upon Scott's statement in constructing the photo array containing Plaintiff's photograph.

---

[7] The facts of this case are well known to the Court. *See* Dkt. No. 46; Dkt. No. 150. Plaintiff alleges that the Defendants coerced/fabricated Scott's statement, an allegation disputed by Defendants. For the sake of this argument, Defendants refer to Scott's account as the "coerced/fabricated statement."

[8] Scott also repeated his statement to the Grand Jury, and it was then elicited in his rebuttal testimony at Plaintiff's criminal trial to refute Plaintiff's alibi witnesses.

**NATHAN &
KAMIONSKI LLP**

### C.      Det. Brown's Trial Testimony—That He Created A Photo Array Based On Scott's Narrative—Is Being Offered For The Truth Of The Matter And Is Therefore Hearsay.

Fed. R. Evid. 801(c) provides, "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." *Id.* The Fourth Circuit explained, "[a] statement offered for a purpose other than to prove the truth of the assertion contained within the statement is not inadmissible hearsay." *United States v. Guerrero-Damian*, 241 Fed. Appx. 171, 173 (4th Cir. 2007). Therefore, "[a] statement is not hearsay if it is offered to… show the effect on the listener or listener's state of mind." *Id.* (citing *United States v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988)).

To explain the application of Rule 801 to these facts, some predicates are in order:

1)      Det. Brown is the "declarant."

2)      The "matter asserted in the statement" is Det. Brown's 1992 trial testimony, that based on what Scott told him, "I obtained a photo of a young man with a nickname of Scooter . . . [and] assembled a photo line-up card and showed it to the victim's brother, Edward ["Gene"] Smith." Ex. C, Trial Tr., June 11, 1992, 52:22-53:5.

3)      The "party offer[ing]" the statement is Plaintiff (to the 2026 jury).

4)      The "listener" is the 1992 criminal trial jury.

5)      The "truth of the matter asserted" is that Det. Brown was told ***something*** by Scott[9] that led him to put Plaintiff in a photo array and show it to Gene Smith.

6)      The "effect on the listener" is some unspecified effect Det. Brown's 1992 testimony had on the listener, *i.e.,* the 1992 jury.

To convince the Court to admit Det. Brown's testimony as non-hearsay, Plaintiff now claims he is introducing Det. Brown's 1992 statement, not for the truth of the matter, but for its effect on the 1992 jury. The problem with Plaintiff's position is that ***if*** he is using Det. Brown's testimony to substantiate the causation/materiality of Scott's coerced/fabricated statement, then in fact, he ***is*** introducing it for the truth of the matter and not for its mere effect on the listener. It is therefore hearsay.

---

[9] What Scott told Det. Brown is not significant. What is significant is that Scott told him something that caused him to put Plaintiff in a photo array and show it to Gene Smith. In other words, Det. Brown constructed his photo array in reliance on Scott's coerced/fabricated statement. Said another way, Gene Smith's identification of Plaintiff was the product of Scott's coerced/fabricated statement—an element Plaintiff needs to prove.

**D.    The Coerced/Fabricated Statement Is Only Material, Or Even Relevant, If It Caused Plaintiff's Loss Of Liberty.**

To prove the element of causation/materiality of the coerced/fabricated statement, Plaintiff needs to demonstrate that the coerced/fabricated statement was the proximate and but-for cause of Gene Smith's identification of Plaintiff and was material to Plaintiff's conviction. *See* Defendants' Proposed Jury Instruction Nos. 27 and 28A at Dkt. No. 170 at 35, 39. In other words, to prove that Scott's coerced/fabricated statement caused Plaintiff's loss of liberty, Plaintiff must prove that Scott's statement was used to place Shipley in the photo array that was used in Gene Smith's identification of Plaintiff. If Plaintiff does not demonstrate that Det. Brown created the photo array based upon Scott's coerced/fabricated statement, the fact that Scott's statement was coerced/fabricated—or even that Scott made a statement—becomes of no consequence because nothing of relevance would have come of the statement. If Defendants coerced/fabricated Scott's statement, but that statement wasn't used by the Defendants or by Det. Brown, the fact that it was coerced/fabricated, and indeed its mere existence, is irrelevant because it was never used by anyone in the prosecution or conviction of Plaintiff; it would simply be a red herring.

Said another way, at its core, Plaintiff's fabrication claim requires proof that Gene Smith's identification of Plaintiff was the product of Scott's coerced/fabricated statement. Plaintiff, therefore, must show that the coerced/fabricated statement was used by Det. Brown to place Plaintiff in the photo array and thereby contributed to Gene Smith's identification of him. He will attempt to make that connection by using Det. Brown's testimony describing how he came to put Plaintiff's photo in the array. That is the only relevance of Brown's testimony at trial in 1992 and only relevance at trial now.

**E.    To Prove Causation, Det. Brown's Assertion Must Be Introduced For The Truth Of The Matter.**

The only way for Plaintiff to prove causation now is for the 2026 jury to hear substantively, *i.e.,* "for the truth of the matter," that Det. Brown constructed his photo array based on what Scott told him. To be clear, what Scott told Det. Brown was not relevant, from an evidentiary perspective, then and is not relevant now.[10] What is now relevant to Plaintiff's §1983 claim is that Det. Brown acted upon Scott's information, whatever that information was. Said another way, for Scott's coerced/fabricated statement to have had any causal/material effect on Plaintiff's conviction, Gene Smith's identification of Clarence Shipley must be the product of Scott's coerced/fabricated statement.

The only link that turns Gene Smith's identification into a product of Scott's coerced/fabricated statement is Det. Brown's testimony that he constructed the photo array based on what Scott told him. That is precisely what Plaintiff needs to prove in order to link Scott's coerced/fabricated statement to Brown's construction of the photo array and the resulting identification by Gene Smith. To prove his claim of fabrication, Plaintiff needs the 2026 jury to

---

[10] What Scott actually told Det. Brown—that Plaintiff attempted to rob him—also touched off an evidentiary ruling that may have turned on the question of whether Scott's statement was being introduced for effect on the listener or for truth of the matter asserted. In that instance, Scott was the declarant and the matter asserted in the statement was that Plaintiff robbed Scott shortly before the murder in the same vicinity.

hear "for the truth of the matter" that Det. Brown relied upon Scott's statement. Plaintiff is haphazardly arguing that he is introducing Det. Brown's statement for the effect it had on the 1992 jury. The statement—"I obtained a photo of a young man with a nickname of Scooter . . . [and] assembled a photo line-up card"—had no effect on the 1992 jury at all; notably, Plaintiff does not offer what effect he alleges it had.[11] It was of no consequence to the 1992 jury how Det. Brown got the idea to include Plaintiff in a photo array any more than how Det. Brown came to place the other five photographs in the array. To the 1992 jury, one photograph or all six photographs could have come from a Sears catalog. What was of consequence to the 1992 jury was that Gene Smith identified one of the six as the shooter, not to mention that he identified Plaintiff as the shooter during his trial testimony with great certainty. However, now that Plaintiff, in 2026, is alleging that Gene Smith's identification of Plaintiff in the array was the product of Scott's coerced/fabricated statement, it is of consequence to the 2026 jury that Det. Brown placed it there based on Scott's coerced/fabricated statement. To come to that conclusion, the 2026 jury must hear, **for the truth of the matter**, that Det. Brown placed Plaintiff's photo in the array based on Scott's coerced/fabricated statement.

**Plaintiff cannot have it both ways**. He cannot argue, on the one hand, that Det. Brown's testimony is being introduced to the 2026 jury for the effect it had on the 1992 jury, and then, on the other hand, argue that it should be accepted by the 2026 jury for the truth of the matter in order to prove causation. If Plaintiff introduces Det. Brown's 1992 testimony for the effect that it had on the 1992 jury, then he is, by his own admission, not introducing it for the truth of the matter and he fails to establish the causation element of his claim.

### III.    DET. BROWN'S 1992 TESTIMONY IS HEARSAY AND NOT ADMISSIBLE UNDER ANY HEARSAY EXCEPTION INCLUDING THE FORMER TESTIMONY OF UNAVAILABLE WITNESS EXCEPTION.

As stated above, Det. Brown's 1992 testimony is hearsay and, if the Court agrees, would only be admissible if Plaintiff can show the testimony fits within a hearsay exception.

### A.    The Applicable Legal Standard.

Fed. R. Evid 804(b)(1) provides a limited hearsay exception for former testimony of a now unavailable witness.[12] The exception applies only when: (A) the testimony "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one;" and (B) the testimony "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or

---

[11] This is highlighted by the fact that the trial prosecutor abandoned her effort to have Det. Brown testify that Scott told him Shipley robbed him and was satisfied to ask, "you learned information from this witness… [a]nd upon learning that information what, if anything, did you do?" Det. Brown then responded, "I obtained a photo of a young man with a nickname of Scooter . . . [and] assembled a photo line-up card and showed it to the victim's brother, Edward ["Gene"] Smith." *See* Ex. C, Trial Tr., June 11, 1992, 52:17-21. If Plaintiff does not link Allen Scott's coerced/fabricated statement to the photo array, and thereby to Gene Smith's identification, he fails to demonstrate an essential element of his fabrication claim, to wit: causation.

[12] The parties stipulate that Gene Smith and Det. Brown are deceased. *See* Dkt. No. 173 at 9. Plaintiff has not explained, and Defendants therefore do not concede, the unavailability of any other witness.

redirect examination." Fed. R. Evid. 804(b)(1). Both requirements must be satisfied; the absence of either is fatal to admissibility.

The Fourth Circuit summarized the standard as follows: "Federal Rule of Evidence 804(b)(1) permits the introduction of '[t]estimony given as a witness at another hearing . . . if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.'" *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995). "'[W]hen reviewing the admissibility of evidence pursuant to Rule 804(b)(1),' we focus 'on the similarity of motives between the predecessor in interest and the one against whom the [testimony] is now offered.'" *Id.* citing *Horne v. Owens–Corning Fiberglas Corp.*, 4 F.3d 276, 282 (4th Cir.1993). "When the motives [of the predecessor in interest and the current party] differ, the testimony may not be introduced." *Id.*

Importantly, "the party against whom the testimony was admitted in the prior proceeding need only have had a 'similar motive,' not an 'identical motive,' to the party in the second proceeding." *Id.* (quoting *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring)). In applying this standard, courts have considered whether the relevant parties had a "substantially similar" motive, or if the questioning in the respective proceedings shared the same "dominant motive." *Id.* "The 'similar motive' analysis is 'inherently a factual inquiry' that gauges 'the similarity of the underlying issues and . . . the context of the . . . questioning.'" *McPherson v. Patton*, 176 F.4th 779, 789 (4th Cir. 2026) (quoting *Salerno*, 505 U.S. at 326 (Blackmun, J., concurring)). The opportunity and similar motive requirement "operates to screen out those statements, which although made under oath, were not subject to the scrutiny of a party interested in thoroughly testing its validity." *United States v. Pizarro*, 717 F.2d 336, 349 (7th Cir. 1983). "If a fact is critical to a cause of action at a second proceeding but the same fact was only peripherally related to a different cause of action at a first proceeding, no one would claim that the questioner had a similar motive at both proceedings to show that the fact had been established (or disproved)." *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993).

The burden rests squarely on the proponent of the former testimony—here, Plaintiff—to establish that the party against whom the testimony is now offered had an opportunity and similar motive to develop it. *Witham v. Mabry*, 596 F.2d 293, 297 (8th Cir. 1979). *See also United States v. Day*, 789 F.2d 1217, 1221 (6th Cir. 1986) ("The proponent of a hearsay statement bears the burden of proving each element of a given hearsay exception or exclusion."). The burden of showing unavailability under Rule 804 is also on the proponent. *Weisman v. Alleco, Inc.*, 925 F.2d 77, 79 (4th Cir. 1991). A court must be convinced by a preponderance of the evidence that the hearsay exception applies. *Bourjaily v. United States*, 483 U.S. 171 (1987). Relevant here, the rule requires more than mere opportunity to examine the witness; it requires a *similar motive* to do so. *See* Fed. R. Evid. 804(b)(1). Even under the acknowledged principle that the motives need not be identical, they must be substantially similar. The rationale is whether the former testimony was "subject to the scrutiny of a party interested in thoroughly testing its validity." *Pizarro*, 717 F.2d at 349. Where, as here, the motives are fundamentally divergent, the former testimony is inadmissible.

7

**NATHAN &
KAMIONSKI LLP**

### B.    The Fourth Circuit's Recent Holding In *McPherson v. Patton.*

In *McPherson v. Patton*, 176 F.4th 779 (4th Cir. 2026), the Fourth Circuit recently addressed the admissibility of former trial testimony under Rule 804(b)(1) in the context of a §1983 fabrication claim. In that case, two brothers, Kenneth McPherson and Eric Simmons brought a civil rights action against Baltimore Police Department Detectives Patton and Barlow, who had investigated the murder for which the plaintiffs were convicted. A key witness, Marcus King, was deceased. The plaintiffs sought to introduce King's trial testimony under Rule 804(b)(1).

The critical factual circumstance in *McPherson* was King's on-the-stand recantation of his statement to the detectives. King had been called by the prosecutor (ASA Holback) as the State's first witness. On the stand, King recanted his recorded statement to the detectives and testified that Dets. Patton and Barlow—the defendants in the subsequent §1983 action—"forc[ed]" him to lie and admit his and the plaintiffs' involvement in the murder. This recantation fundamentally transformed the nature of the prosecutor's examination. That transformation, in the Fourth Circuit's view, turned ASA Holback's motive to develop King's testimony into a *similar motive* of the subsequent §1983 defendants.

After King's recantation, ASA Holback extensively questioned King about the circumstances of his interrogation: whether the detectives advised him of his constitutional rights, whether they forced him to lie while his mother was present, who told him what to say, whether Det. Barlow screamed at him, and how long the detectives questioned him before turning on the tape recorder. The trial court even admonished ASA Holback to "not try to dig [into] the same thing over and over again." *Id.* at 788. ASA Holback was clearly developing the propriety of the detectives' interrogation.

The Fourth Circuit held that the district court abused its discretion in excluding King's testimony. The court found similar motive because: King (1) recanted his recorded statement incriminating McPherson and Simmons and (2) testified that the detectives made him lie in the recorded statement and resorted to screaming at him to elicit it. As evidenced by her line of questioning to King, ASA Holback "knew that she needed to do more than simply affirm the veracity of the State's first witness's recorded statement. She also had to defend the integrity of the investigation and the detectives who carried it out." *Id.* at 788. Likewise, in the subsequent §1983 case, the detectives also needed to defend the integrity of their investigation. Thus, ASA Holback and the §1983 defendants had, in the Fourth Circuit's view, similar motives.

In ruling that there was similar motive, the court emphasized that "King's recantation makes all the difference." *Id.* at 787. The court further noted that "the common threads from King's examination to Det. Patton's examination to ASA Holback's closing were to convey both Det. Patton's and his investigation's integrity." *Id.* at 789.

The *McPherson* holding was thus driven by a unique factual circumstance: the witness's on-the-stand recantation *accusing the defendant detectives of coercion*. That extraordinary event transformed the prosecutor's motive from merely proving the defendants' guilt to also defending the integrity of the detectives' investigation—a motive substantially similar to what defense counsel would have in the subsequent §1983 action. Absent such a recantation, the general

8

**NATHAN & KAMIONSKI LLP**

principle that prosecutors in criminal trials have fundamentally different motives from defendants in subsequent civil trials remains controlling. Such is the case here. The prosecutor in the 1992 trial had a fundamentally different motive than the §1983 Defendants in this case.

### C.     Det. Brown's Testimony Is Distinguishable From *McPherson.*

The facts of this case are materially distinguishable from *McPherson* in every respect that mattered to the Fourth Circuit's decision, and Det. Brown's 1992 trial testimony (the "former testimony") does not satisfy the "similar motive" requirement of Rule 804(b)(1) for at least four independent reasons.

### 1.     Det. Brown Did Not Recant Or Accuse The Defendants Of Misconduct.

In *McPherson*, the Fourth Circuit held that "King's recantation makes all the difference." *Id.* at 787. King recanted on the stand and directly accused Dets. Patton and Barlow—the defendants in the subsequent §1983 action—of forcing him to lie. This accusation compelled the prosecutor to defend the integrity of those specific detectives and their investigative methods, creating a motive substantially similar to what defense counsel would have in the civil case.

Nothing remotely analogous occurred during Det. Brown's testimony. Det. Brown was a cooperative prosecution witness who testified entirely consistently with the State's theory of the case. He was the lead homicide detective who described how the investigation unfolded: responding to the crime scene, interviewing witnesses, receiving information from Officer Henneman about Scott, assembling the photo array, obtaining Gene Smith's identification of Plaintiff, executing the search warrant, and arresting Plaintiff. At no point during his testimony did Det. Brown accuse Officers Gerst, Henneman, or Stanton of any misconduct. At no point did Det. Brown recant or deviate from the prosecution's narrative. The Second Circuit described the admissibility question under Rule 804(b)(1) as whether the party had "an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *DiNapoli*, 8 F.3d at 914–15. There was simply no event during Det. Brown's testimony that would have given the prosecutor any reason, let alone with any intensity, to defend Gerst, Henneman or Stanton's conduct. There was, thus, no opportunity, nor any motive, to develop Det. Brown's testimony further to the point that it would be able to be used now.

Det. Brown's testimony about Defendants' involvement was limited to a single, brief passage: "I was contacted by Officer Heneman [*sic*] of the Southern District, who informed me he had arrested a young man for a series of thefts and the young man indicated to him he had knowledge, he may have knowledge of the homicide that occurred in Cherry Hill." Ex. C, Trial Tr., June 11, 1992, 51:22-52:2. The "young man" was Scott. Det. Brown then spoke to Scott. Based on what Scott told him, he obtained a photo of "Scooter" (Plaintiff), assembled a photo lineup, and showed it to the victim's brother, Gene Smith, who identified Plaintiff as the shooter. That is the full extent of Det. Brown's testimony regarding Defendants. Det. Brown did *not* testify about the circumstances of Scott's alleged interrogation by Defendants. He did *not* testify about whether Scott was coerced, assaulted, or promised leniency. He did *not* testify about whether Scott's statement was fabricated. He simply relayed that Henneman contacted him with

9

information from Scott, and Det. Brown then acted on that information through routine investigative steps.

### 2. The Prosecutor's Motive Was Fundamentally Different From What Defendants' Counsel Would Have In This Action.

At Plaintiff's criminal trial in 1992, the prosecutor (ASA Vickie Wash) examined Det. Brown to establish the chain of investigation leading to Plaintiff's identification, arrest, and prosecution. Her dominant motive was to prove Plaintiff's guilt—to show the jury that the investigation logically and properly led from the crime scene to Plaintiff as the suspect, through witness identifications and physical evidence.

The prosecutor had no motive whatsoever to probe whether Gerst, Henneman and Stanton had coerced/fabricated Scott's statement. From the prosecutor's perspective, Scott's information was simply a lead that directed Det. Brown to include Plaintiff in the photo array. Whether that information was coerced or fabricated was entirely irrelevant to the prosecutor's goal of securing a conviction. The prosecutor's motive was to *use* Scott's information as a building block in her case, not to defend or attack how that information was obtained.

In this §1983 action, by contrast, the central issue to Officers Gerst, Henneman and Stanton is whether they coerced/fabricated Scott's statement. Defense counsel's motive in examining Det. Brown would be to elicit testimony showing: (1) that Det. Brown received Scott's information in the ordinary course of the investigation; (2) that Det. Brown had no reason to doubt the information; (3) the precise nature of what Officer Henneman communicated to Det. Brown; (4) Det. Brown's independent interactions with Scott confirming the information; and (5) any facts tending to show that Scott's statement was genuine rather than fabricated. These are entirely different lines of inquiry from those the prosecutor pursued at the criminal trial. The prosecutor never asked Det. Brown a single question directed at establishing the reliability or voluntariness of Scott's statement to Officer Henneman, because she had no reason to do so.

### 3. Defendants Are Not The Same Parties Whose Conduct Was At Issue In The Criminal Trial And Had No Opportunity To Develop Brown's Testimony.

In *McPherson*, the defendant officers, Dets. Patton and Barlow, were the same officers who conducted the interrogation of King, the very interrogation King accused them of using to coerce his false statement. The prosecutor's questioning of King about that interrogation directly addressed the conduct of the same individuals who were later sued in the §1983 action. It is therefore arguable that there was thus a natural and direct alignment of motive.

Here, Defendants Gerst, Henneman and Stanton were patrol officers in the Southern District who interviewed Scott in connection with auto thefts. They were *not* assigned to the homicide investigation. They did *not* testify at Plaintiff's criminal trial. The prosecutor had *no* reason to develop Det. Brown's testimony regarding Defendants' specific conduct. Det. Brown's testimony referenced Officer Henneman only in passing as the source of information about Scott and did not mention Officers Gerst or Stanton at all. There was no alignment whatsoever between

the prosecutor's interest in examining Det. Brown and the interests that defense counsel for Officers Gerst, Henneman and Stanton would have in 2026 in this §1983 action.

In this case, the parties against whom the former testimony is being introduced are Defendants Gerst, Henneman and Stanton. None of them had the opportunity, let alone similar motive, to develop Det. Brown's testimony by direct, cross, or redirect examination. Likewise, the State was not a predecessor in interest to Officers Gerst, Henneman and Stanton. In 1992, Officers Gerst, Henneman and Stanton were not parties to Plaintiff's 1992 criminal trial. The State and Plaintiff were the only parties. Indeed, Defendants Gerst, Henneman and Stanton were not even witnesses at trial. Thus, they never had the ***opportunity,*** let alone the motive, to develop any of Det. Brown's testimony. In adopting Rule 804(b)(1), the House of Representatives Judiciary Committee noted that "it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party." *Lloyd v. Am. Exp. Lines, Inc.*, 580 F.2d 1179, 1185 (3d Cir. 1978).

The plain language of Rule 804(b)(1) is also instructive. The rule provides that the former testimony of an unavailable witness is admissible if it "is now offered against a party who ***had--or, in a civil case***, whose predecessor in interest ***had***--an opportunity . . ." Fed. R. Evid. 804(b)(1) (emphasis added). The plain reading is that either the party had an opportunity to develop the testimony or in a civil case, a predecessor in interest had an opportunity to develop the testimony. In this case, the former testimony was offered in a criminal case. That means that the only person against whom such testimony can be introduced is a party and not a successor in interest. This may be recognition that the State in a criminal case has no successor in interest. If the former case was a civil case, then evidence can be introduced against a party if the predecessor in interest had opportunity and motive to develop the testimony. But if like here, the former case was a criminal case, former testimony can only be introduced against a party who themselves had opportunity and motive to develop the testimony.

### 4. The District Court's Own Reasoning in *McPherson* Supports Exclusion Here.

Even though the Fourth Circuit reversed this Court in *McPherson*, this Court's underlying reasoning is highly instructive and, in the absence of the extraordinary recantation that occurred in that case, would have been dispositive. In its ruling, this Court observed that "[p]rosecutors in criminal trials have different motives and priorities than defendants in a subsequent civil trial. In *McPherson*, ASA Holback did not have to rehabilitate the Defendant Officers' credibility to, in her mind, protect the public and secure a just result in Plaintiffs' criminal trial." *McPherson v. Balt. Police Dep't*, 2023 WL 5433011, at \*14 (D. Md. Aug. 3, 2023). The Fourth Circuit acknowledged the validity of this reality, noting this was a "reasonable observation." *McPherson*, 176 F.4th at 790, fn.6 (noting "[t]he [district] court's reasonable observation was not dispositive given that the court didn't end its analysis there").

The Fourth Circuit reversed *only* because of the unique circumstance of King's recantation, an event that *transformed* the prosecutor's motive from one of merely proving guilt to one of defending the detectives' integrity. Absent such a transformative event, the general principle that prosecutors in criminal trials have fundamentally different motives from defendants in subsequent

11

civil trials should carry the day. At the 1992 trial, there was no recantation, no accusation of misconduct, and no event that would have caused the prosecutor's motive to align with the present interests of §1983 Defendants Gerst, Henneman and Stanton. The "reasonable observation" that this Court made—and that the Fourth Circuit expressly validated—applies with full force to this case.

*   *   *

In conclusion, Defendants continue to seek clarity from Plaintiff on what particular 1992 trial testimony he seeks to introduce as non-hearsay and what portions he seeks to introduce for the truth of the matter. As to Det. Brown's 1992 trial testimony, Defendants assert that it is hearsay and does not fall within the former testimony exception under Fed. R. Evid 804(b)(1) and, critically, that Plaintiff must admit it for the truth of the matter in order to prove all elements of his coercion/fabrication claim.

Respectfully submitted,

*/s/ Ephraim R. Siff*
Shneur Z. Nathan, # 20707
Avi T. Kamionski, # 20703
Ephraim R. Siff, # 20761
Christine Goo, # 30378
Perry Wasserman, # 31209
Kimberly Mann, # 30602
NATHAN & KAMIONSKI LLP
575 South Charles Street, Suite 402
Baltimore, Maryland 21201
410-630-4611 (tel)
410-705-4379 (fax)
esiff@nklawllp.com

*Attorneys for Defendants*