

June 25, 2026

The Honorable Stephanie A. Gallagher
U.S. District Court for the District of Maryland
101 West Lombard Street, 7C
Baltimore, Maryland 21201

   **Re:**   ***Shipley v. Henneman, Sr., et al.* (No. 21-CV-03173-SAG)**

Dear Judge Gallagher:

   Plaintiff Clarence Shipley writes to address issues raised in this Court's June 23, 2026 order regarding the upcoming trial. (Dkt. No. 201).

### I.   Shipley should be permitted to introduce evidence of indemnification.

   During the pretrial conference, this Court ruled that it will hold a "separate punitive damage phase." (6-11-26 Tr. at 29). This Court bifurcated in this way to keep the "indemnification" evidence from the jury until it considers punitive damages. (6-11-26 Tr. at 29).

   Defendants have moved for reconsideration of this Court's decision to permit indemnification evidence. (Dkt. No. 199). The basis for Defendants' request is that they have withdrawn their suggested instruction asking the jury to consider their "financial resources" when assessing punitive damages. (Dkt. No. 199, at 1). Defendants state that they will "not offer evidence about their finances and/or their inability to pay punitive damages." (Dkt. No. 199, at 2).

   This Court requested Shipley's position on "whether evidence of indemnification should be introduced (even in a bifurcated phase) if no instruction is given or argument is made regarding ability to pay." (Dkt. No. 201).

   This Court should still permit Shipley to introduce indemnification evidence.

   Defendants' argument primarily rests on the point that they will not affirmatively raise inability to pay. But a "defendant's financial position is a proper consideration in assessing punitive damages." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004). It bears directly on both specific and general deterrence. *Id.* Thus, regardless of whether Defendants intend to affirmatively raise *inability* to pay,

Shipley can raise *ability* to pay during the punitive-damages phase. Their ability to pay is relevant to deterrence, and deterrence is something the jury must consider.

As Shipley previously discussed (Dkt. No. 174, at 5−6; Dkt. No. 185, at 8−9), Senior Judge Deborah K. Chasanow discussed this point in *Wallace v. Poulos*, 861 F. Supp. 2d 587 (D. Md. 2012), another § 1983 case. In *Wallace*, plaintiff's counsel did not need to wait for the defendants to raise inability to pay to discuss indemnification evidence. *Id.* at 599. "The jury must know the impact an award will have on the defendant to properly assess punitive damages," and it cannot do that unless the jury learns "the ultimate source of payment." *Id.* (quoting *Perrin v. Anderson*, 784 F.2d 1040, 1047−48 (10th Cir. 1986)). The court also discussed why indemnification matters to assessing punitive damages:

> [I]nforming the jury of the indemnification agreement makes jurors aware that Defendants' ability to pay is essentially a moot point. For another, telling the jury about indemnification ensures that jurors have an accurate understanding of the likely deterrence effect of their judgment. When an officer is fully indemnified, specific deterrence is substantially diminished and perhaps eliminated. Armed with that knowledge, the jury could direct its attention to other punitive damages considerations, such as general deterrence.

*Id.* at 602 (footnote omitted). Given those considerations, the court disagreed that indemnification evidence would improperly "distract[]" the jury. *Id.* The evidence was necessary to ensure that the jury assessed punitive damages based on accurate information. *Id.*

Though *Wallace* is a leading case on this issue in this district, and Shipley has discussed it repeatedly (Dkt. No. 174, at 5−6; Dkt. No. 185, at 8−9), Defendants ignore it. They instead just repeat their prior citations to *Jones v. Allen*, 2016 WL 9443772 (D. Md. Oct. 24, 2016) and *Hicks v. Ferreyra*, 582 F. Supp. 3d 269 (D. Md. 2022). (Dkt. No. 199, at 2). According to Defendants, those cases "make clear [that] evidence of indemnification is only admissible if Defendants choose to put their lack of financial resources at issue." (Dkt. No. 199, at 2). But, as Shipley has pointed out (Dkt. No. 185, at 10−11), those cases both merely held that a plaintiff could introduce indemnification evidence when the defendant put lack of resources at issue. *See Hicks*, 582 F. Supp. 3d at 290−91; *Jones*, 2016 WL 9443772, at *8. They did not address the issue now before this Court that *Wallace* addressed: whether indemnification evidence is admissible even when defendants do not put their lack of resources at issue.

In any event, Defendants' argument rests on a fiction. Even if they do not expressly argue inability to pay, they will each testify that they are retired police officers. Without the indemnification evidence, the jury will be affirmatively misled

into thinking that retired police officers must pay a punitive damage award out of pocket. That misunderstanding will result in a failure to properly assess deterrence.

Defendants also suggest that a single line of indemnification evidence might so distract the jury that they will not correctly assess punitive damages. (Dkt. No. 199, at 3). But a properly instructed jury can follow a simple instruction on the purpose of a punitive-damage award. Indeed, this Court is already going out of the way to ensure that the jury does not misuse the indemnification evidence by holding an entirely separate proceeding on punitive damages. Bifurcation eliminates any real possibility of unfair prejudice or confusion.

This Court should deny Defendants' motion for reconsideration.

## II.    Shipley intends to introduce portions of Brown's criminal trial testimony for its truth.

This Court has asked Shipley to address what criminal-trial evidence he intends to introduce for its truth. (Dkt. No. 201, at 2). Shipley intends to introduce a portion of Brown's criminal trial testimony for the truth.

During Shipley's criminal trial, Brown testified about his investigation, including the facts surrounding Gene Smith's original identification of Shipley. Brown's testimony establishes that he showed Smith a picture of Shipley only because of Scott's prior statement. Attached as Exhibit A is the relevant portion of Brown's testimony. (The redacted provisions concern comments and rulings by the judge and objections by counsel.) Shipley intends to introduce this portion of Brown's testimony for its truth because it—along with other evidence—helps prove that Scott's statement was a but-for cause of Smith's identification of Shipley. Without the statement, Smith never would have had the chance to incorrectly identify Shipley.

As discussed below, Brown's testimony is admissible for its truth under the hearsay exception for former testimony (Rule 804(b)(1)) and under the residual exception for hearsay (Rule 807).

### A.    The hearsay exception for former testimony covers the relevant portions of Brown's criminal-trial testimony.

Rule 804(b)(1) provides that an unavailable witness's prior testimony is admissible for its truth when it is "now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Brown's prior testimony fits squarely within this rule.

To begin with, the parties have stipulated that Brown is deceased (Dkt. No. 178, at 9), and his "death" means he is "unavailable as a witness," Fed. R. Evid. 804(a)(4).

Moreover, the trial prosecutor had a "similar motive" to develop Brown's testimony on the points discussed above—and the prosecutor is defense counsel's "predecessor in interest" in this case. Fed. R. Evid. 804(b)(1). This finds confirmation in *McPherson v. Patton*, 176 F.4th 779 (4th Cir. 2026), a § 1983 case involving a fabrication-of-evidence claim in which the Fourth Circuit held that a plaintiff could introduce prior criminal trial testimony of a deceased witness for its truth under Rule 804(b)(1). This case is just like *McPherson* in all material respects.

Defendants disagree. (Dkt. No. 200, at 6−12). Defendants' basic point is that the witness at issue in *McPherson* had recanted during his criminal-trial testimony, and the prosecutor therefore had the same motive to try to undermine that recantation as the defendants would have had years later. (Dkt. No. 200, at 8 (citing *McPherson*, 176 F.4th at 787−89)). Defendants argue that this case differs because Brown did not recant. (Dkt. No. 200, at 9).

This Court should reject Defendants' attempt to distinguish *McPherson*. As in *McPherson*, the prosecutor's motive and Defendants' motive are "substantially similar" when it comes to Brown's testimony, even if the facts are not identical. 176 F.4th at 787 (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995)).

Defendants concede that the prosecutor's motive in Shipley's criminal trial was "to show the jury that the investigation logically and properly led from the crime scene to Plaintiff as the suspect, through witness identification and physical evidence." (Dkt. No. 200, at 10). That is, the prosecutor was trying to show that the investigation had integrity and correctly established Shipley's "guilt." (Dkt. No. 200, at 10). That's the *same* motive as Defendants here: they want to show that the investigation of Shipley had integrity and that it properly led to his conviction.

Even more concretely, the trial prosecutor had a motive to establish that Scott's testimony did not stem from an improper interrogation, just like Defendants do. The trial prosecutor had a particularly strong incentive to establish that Scott's interrogation was proper and that his resulting testimony was true. She needed Scott's testimony to neutralize Shipley's alibi—in her words, that Scott's testimony and Shipley's alibi witnesses were a "wash." (Dkt. No. 198-3, at 41). Moreover, when the prosecutor initially asked Scott during trial whether he saw Shipley on the night of the murder, Scott said, "[n]o." (Dkt. No. 198-2, at 222). That is, Scott initially recanted his pretrial statement, just like the witness in *McPherson*. Thus, the integrity of Scott's identification of Shipley was at issue, and the prosecutor had every incentive to try to establish that Scott had properly identified Shipley. In other words,

the prosecutor also had a motive to establish that Scott's statement was properly obtained—that it was not a product of coercion.

Defendants' real complaint is not that the prosecutor had a different *motive*. Instead, their complaint is that the prosecutor did not ask Brown specific questions about the Scott interrogation related to its integrity. (Dkt. No. 200, at 10).

The error underlying Defendants' argument is that they just assume—without any evidence—that Brown had useful information to provide about Scott's pretrial interrogation. *But Brown had no first-hand information about Scott's pretrial interrogation.* And the record from this case has not turned up any piece of evidence that Brown knew that would have shed light on whether Scott's statement was coerced or fabricated. Defendants, then, ask this Court to speculate that Brown had never-before-revealed information about Scott's interrogation that would help establish that it produced truthful information and that the prosecutor just chose not to introduce it (even after Scott initially recanted at trial).

Put differently, if Brown had information that could have helped corroborate Scott's original identification of Shipley—and thus helped corroborate Scott and Smith's trial testimony—the trial prosecutor had every incentive to elicit that information from Brown. It would have greatly helped her case. The reason she did not ask Brown questions about Scott's original statement and whether it was fabricated is because he did not have any information. He did not witness it.

That aside, the main point is that the prosecutor had the same "motive" to establish that Scott's interrogation was not the product of coercion or fabrication— and that's what matters for Rule 804(b)(1)(B). In this way, this case is indistinguishable from *McPherson*. Here, both sets of lawyers have a motive to use a friendly witness to support the integrity of the investigation and conviction. In *McPherson*, both sets of lawyers had a motive to undermine the credibility of a hostile witness. Thus, while the facts of *McPherson* are not the same, the legal principle it established compels the conclusion that Brown's testimony fits under the hearsay exception for former testimony.

## B.    The residual exception for hearsay covers the relevant portions of Brown's criminal-trial testimony.

This Court need not even rely on the former-testimony exception. This Court should admit the testimony under the residual exception for hearsay under Rule 807. Under this exception, Shipley must establish (1) reliability of the evidence, Fed. R. Evid. 807(a)(1); (2) relative probative value of the evidence, Fed. R. Evid. 807(a)(2), and (3) proper notice, Fed. R. Evid. 807(b). Shipley can establish each. Indeed, while hearsay exceptions are designed to keep unreliable information from the jury, Defendants are attempting to keep from the jury testimony about why Smith was

shown Shipley's picture that is indisputably true. The evidence at issue is exactly the kind that comes in under the residual exception.

1.      The residual exception requires that the statement be "supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement[.]" Fed. R. Evid. 807(a)(1).

Here, we have a statement made under oath. Brown had no reason (and no incentive) to lie about why he placed Shipley in the photo array. The statement is also indisputably true. In fact, Defendants moved in limine to "preclude any argument, testimony or inference [that] any police officer falsely testified or provided misleading testimony at Plaintiff's criminal trial or during any criminal proceeding." (Dkt. No. 175, at 18 (bolding removed)). Thus, Defendants themselves do not contend that Brown's testimony is false.

Brown's testimony is also corroborated by other evidence in the record. Brown, for example, memorialized this in a police report. The report is attached as Exhibit B and confirms that, after Scott's statement, Brown intended to show Smith a picture of Shipley. The photo array itself also supports this. It is attached as Exhibit C.

The parties have identified no contrary evidence that suggests that Brown lied when he said he only placed the picture of Shipley before Smith because of Scott's statements.

Indeed, former testimony that fails to meet the requirements of Rule 804(b)(1) is perhaps the most common type of evidence admitted under the residual exception. *See Goode v. United States*, 730 F. Supp. 2d 469, 474 (D. Md. Aug. 9, 2010) (collecting Fourth Circuit cases that held that "statements made under oath, grand jury testimony, and plea agreements" were admissible under the older, more restrictive version of the residual exception for hearsay statements).

2.      The residual exception also requires that the statement be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2).

Brown is no longer alive, and there is no other sworn statement confirming that Brown placed a picture of Shipley before Smith because of Scott's statement. No evidence that can be reasonably found is "more probative" on why Brown showed Smith a picture of Shipley. Fed. R. Evid. 807(a)(2). And given that Brown is no longer alive, and given how long ago the photo array happened, no "reasonable efforts" could turn up better evidence. Fed. R. Evid. 807(a)(2).

**3.**    Finally, to rely on the residual exception, a party must "give[] an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b). The notice must be in "writing before the trial[.]" Fed. R. Evid. 807(b).

With this filing, Defendants have the required written notice. And given that the statement is indisputably true, Defendants would not need more time "to meet it" and try to undermine it in some way. Fed. R. Evid. 807(b).

Accordingly, regardless of whether Brown's testimony is admissible under the former-testimony exception, the testimony is admissible under the residual exception.

Respectfully submitted,

*/s/ Doug Keller*

Doug Keller, # 31815
dkeller@flowerskeller.com
Kobie Flowers, # 16511
kflowers@flowerskeller.com
Paul Barr, #32342
pbarr@flowerskeller.com
Flowers Keller LLP
1601 Connecticut Avenue, NW
Washington, D.C. 20009

*Counsel for Clarence Shipley*