

**NATHAN & KAMIONSKI LLP**

**EPHRAIM R. SIFF**
*Partner*
esiff@nklawllp.com
**T:** (410) 630-4611
**F:** (410) 705-4379

July 7, 2026

**FILED VIA ECF**

The Honorable Stephanie A. Gallagher
United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

      Re:    *Shipley v. Henneman, et al*., Case No. 1:21-CV-03173-SAG

Dear Judge Gallagher:

      In accordance with the Court's instructions at trial today, Defendants Edward Nelson Henneman, Sr., Thomas Frank Gerst, and LeRoy Stanton (collectively, "Defendants"), by and through undersigned counsel, write 1) to address the admissibility of Gene Smith's 1992 trial testimony for the truth of the matter under Federal Rule of Evidence 804(b)(1), the former testimony exception to the rule against hearsay, and 2) to propose text for a limiting instruction related to the jury's consideration of the 1992 trial transcript.

**I.     GENE SMITH'S 1992 TRIAL TESTIMONY, IF OFFERED BY DEFENDANTS, FALLS WITHIN THE FORMER TESTIMONY HEARSAY EXCEPTION AND IS ADMISSIBLE FOR THE TRUTH OF THE MATTER.**

**INTRODUCTION**

      Gene Smith testified at Plaintiff's 1992 criminal trial and unequivocally identified Plaintiff as the individual who shot and killed Kevin Smith on October 25, 1991. Gene Smith is now deceased and is therefore unavailable within the meaning of Rule 804(a)(4). His testimony was given under oath at a prior judicial proceeding, and the party against whom it is now offered—Plaintiff—had, through his criminal defense counsel, Michael Rohrback, a full opportunity and similar motive to develop that testimony by cross-examination. Accordingly, Gene Smith's former testimony satisfies each element of Rule 804(b)(1) and should be admitted.

      The Fourth Circuit's recent decision in *McPherson v. Patton*, 176 F.4th 779 (4th Cir. 2026), is on point. In *McPherson*, the court held that prior criminal trial testimony of a now-deceased witness was admissible under Federal Rule of Evidence 804(b)(1) in a subsequent §1983 civil rights action, even though the prior proceeding was a criminal trial separated by more than twenty years. The reasoning of *McPherson* applies with equal—if not greater—force here.

**NATHAN & KAMIONSKI LLP**

## STATEMENT OF FACTS

The following facts have been adduced at trial:

1.      On October 25, 1991, Kevin Smith, Edward Eugene Smith ("Gene Smith"), and Michelle Shipley were walking on Cherry Hill Road in Baltimore, Maryland when an individual approached them with a handgun and announced a robbery. Kevin Smith attempted to flee and was shot in the back and killed while Gene Smith watched. Detective David Brown of the Baltimore Police Department was assigned to investigate the homicide.

2.      On October 28, 1991, Officer Henneman interviewed Allan Paul Scott (now known as Malik Abdul-Aziz) after he was arrested for an unrelated auto theft. During that interview, Scott informed Officer Henneman that on October 25, 1991, shortly before the shooting and in the same vicinity of Cherry Hill Road, Plaintiff approached him with a handgun and attempted to rob him. He jumped a fence and fled. Officer Henneman relayed this information to Detective Brown.

3.      Detective Brown located a photograph of Plaintiff and prepared a photo array which he presented to Gene Smith. Gene Smith unequivocally identified Plaintiff as the shooter.

4.      On June 10, 1992, at Plaintiff's criminal trial in the Circuit Court for Baltimore City, the State called Gene Smith as a prosecution witness. Gene Smith testified under oath that Plaintiff was the individual who shot and killed Kevin Smith. Smith identified Plaintiff in open court and stated that he was absolutely certain of his identification.

5.      Plaintiff was represented at his criminal trial by defense counsel Michael Rohrback, who conducted extensive cross-examination of Gene Smith. On cross-examination, Mr. Rohrback challenged the reliability of Smith's identification by questioning: (a) the eight-day delay between the shooting and the photo identification; (b) whether Smith truly recognized Plaintiff or merely thought the photo "looks just like him"; (c) Smith's prior knowledge of the Shipley family and whether he had seen Plaintiff earlier that evening; (d) whether Smith had told Michelle Shipley the morning after the shooting that "Larry Davis" committed the crime; and (e) the overall circumstances and reliability of the photo array identification procedure.

6.      Gene Smith is now deceased. Although it has not yet been introduced to the jury, the Parties have stipulated to the fact that Gene Smith is deceased. *See* Dkt. No. 173 at 9.

## LEGAL STANDARD

Federal Rule of Evidence 804(b)(1) provides a hearsay exception for former testimony of a now unavailable witness. The rule permits introduction of testimony that: (A) "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one;" and (B) "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." *Id.*

A declarant is "unavailable" within the meaning of Fed. R. Evid. 804(a)(4) if the declarant "cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness." *Id.*

As the Fourth Circuit recently explained, "Federal Rule of Evidence 804(b)(1) permits the introduction of testimony given as a witness at another hearing if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *McPherson v. Patton*, 176 F.4th 779, 786-787 (4th Cir. 2026) (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995)).

"When reviewing the admissibility of evidence pursuant to Rule 804(b)(1), we focus on the similarity of motives between the predecessor in interest and the one against whom the testimony is now offered." *Id.* at 787. Importantly, "the party against whom the testimony was admitted in the prior proceeding need only have had a similar motive, not an identical motive, to the party in the second proceeding." *Id.* (quoting *Supermarket of Marlinton*, 71 F.3d at 127). Courts "consider whether the relevant parties had a 'substantially similar' motive, or if the questioning in the respective proceedings shared the same 'dominant motive.'" *Id.* (quoting *Supermarket of Marlinton*, 71 F.3d at 127).

"The 'similar motive' analysis is 'inherently a factual inquiry' that gauges 'the similarity of the underlying issues and ... the context of the ... questioning.'" *Id.* at 789-790 (quoting *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring)).

## ARGUMENT

Gene Smith's prior trial testimony satisfies each element of Fed. R. Evid. 804(b)(1). First, Gene Smith is unavailable because he is deceased. Second, his testimony was given under oath at a prior trial. Third, the testimony is now offered against Plaintiff, whose criminal defense counsel had both the opportunity and a similar motive to develop Gene Smith's testimony through cross-examination. Each element is addressed in turn.

**A.    Gene Smith Is Unavailable Within the Meaning of Fed. R. Evid. 804(a)(4).**

Fed. R. Evid. 804(a)(4) provides that a declarant is unavailable if the declarant "cannot be present or testify at the trial or hearing because of death." Fed. R. Evid. 804(a)(4). Although it has not yet been introduced to the jury, the Parties have stipulated to the fact that Gene Smith is deceased. *See* Dkt. No. 173 at 9. This element is satisfied, and indeed Plaintiff does not—and cannot—dispute Gene Smith's unavailability.

**B.    Gene Smith's Testimony Was Given at a Prior Trial and Is Offered Against a Party Who Had an Opportunity to Examine Him.**

Fed. R. Evid. 804(b)(1)(A) requires that the former testimony "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one."

3

*Id.* Gene Smith's testimony was given under oath as a witness at Plaintiff's criminal trial in the Circuit Court for Baltimore City on June 10-11, 1992. This element is plainly satisfied.

Fed. R. Evid. 804(b)(1)(B) further requires that the testimony be "now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity ... to develop it by direct, cross-, or redirect examination." *Id.* Gene Smith's testimony is offered here against Plaintiff. At his criminal trial, Plaintiff was a defendant represented by counsel, Michael Rohrback. Mr. Rohrback had a full and unimpeded opportunity to cross-examine Gene Smith, and Plaintiff exercised that opportunity extensively, questioning Smith about the delay in identification, Smith's knowledge of the Shipley family, the reliability of the photo array procedure, and alleged inconsistencies in Smith's account.

The opportunity requirement is thus satisfied. Plaintiff, through defense counsel, had an actual opportunity to develop Gene Smith's testimony by cross-examination; indeed, he availed himself of that opportunity.

## C.  Plaintiff's Criminal Defense Counsel Had a Similar Motive to Develop Gene Smith's Testimony as Plaintiff's Current Civil Counsel Would Have Today.

The critical question under Fed. R. Evid. 804(b)(1) is whether the party against whom the testimony is now offered had a "similar motive to develop" that testimony in the prior proceeding. *McPherson*, 176 F.4th at 787. This inquiry focuses on whether the questioning in both proceedings shares the same "dominant motive." *Id.* The motive need not be identical—only similar. *Id.*

Here, the dominant motive in both proceedings is the same: to undermine and discredit Gene Smith's identification of Plaintiff as the shooter.

### 1.  The Criminal Trial: Defense Counsel's Motive

At Plaintiff's 1992 criminal trial, defense counsel Rohrback's motive in cross-examining Gene Smith was to discredit and undermine Smith's identification of Plaintiff as the shooter. To that end, Mr. Rohrback challenged Smith on multiple fronts:

- The eight-day delay between the shooting and the photo identification, questioning why Smith could not identify someone he supposedly knew from the neighborhood for over a week (Trial Tr., June 10, 1992 at 67:1-15; 69:3-5);

- Whether Smith's statement to the detective was a positive identification or merely that the photo "looks just like him" (Trial Tr., June 10, 1992 at 68:6-10);

- Smith's prior knowledge of and familiarity with the Shipley family, including that he knew Michelle Shipley for years and even questioned whether Smith had attended a birthday party at the Shipley home (Trial Tr., June 11, 1992 at 10:11-19);

- Whether Smith told Michelle Shipley the morning after the shooting that "Larry Davis" was the perpetrator, not Plaintiff (Trial Tr., June 11, 1992 at 10:11-11:3);

4

- Whether Smith had seen Plaintiff earlier that evening asking Michelle for a cigarette (Trial Tr., June 11, 1992 at 10:1-10); and

- The overall circumstances and suggestiveness of the photo array identification procedure.

Each of these lines of cross-examination was directed at the same goal: demonstrating that Gene Smith's identification of Plaintiff was unreliable, inconsistent, or the product of suggestion rather than genuine recognition.

### 2.    The Current Civil Case: Plaintiff's Counsel's Motive

In this §1983 action, Plaintiff alleges that Defendants fabricated Allan Paul Scott's statement. To support that theory, Plaintiff seeks to prove that the identification of Plaintiff was tainted and unreliable; that is, that without the allegedly fabricated Scott statement, there would have been no basis to identify Plaintiff as the shooter. If Gene Smith were alive today, Plaintiff's counsel would cross-examine him with precisely the same dominant motive that Mr. Rohrback had in 1992: to attack the reliability and independence of Smith's eyewitness identification of Plaintiff.

Plaintiff's counsel would ask Gene Smith the same types of questions Mr. Rohrback asked: Why did it take eight days to identify someone you claim to have known? Did you actually recognize Plaintiff, or were you influenced by the photo array? Did you initially identify someone else? How reliable was your observation given the circumstances of the crime? These questions go to the heart of Plaintiff's fabrication theory: that the identification was not independent but was the product of an investigation tainted by the allegedly fabricated Scott statement.

### 3.    *McPherson* Compels a Finding of Similar Motive.

The Fourth Circuit's analysis in *McPherson* is controlling and compels admission of Gene Smith's testimony. In *McPherson*, the court found similar motive even though the prior proceeding was a state criminal trial and the current proceeding was a federal civil §1983 action, over twenty years separated the two proceedings, the witness in *McPherson* (Marcus King) was "an imperfect trial witness," and there were "no doubt differences between the questions [the witness] faced in the ... criminal trial and those he would face today in a civil trial." *McPherson*, 176 F.4th at 790.

What mattered was the "overlap" in the subject matter of the questioning—specifically, that the prosecutor in the criminal trial had questioned the witness "extensively about [the] allegations" of fabrication "and the underlying interrogation." *Id.* The court held that the prosecutor and defense counsel "ultimately share[d] a similar incentive to elicit [the witness's] understanding" of the alleged fabricated evidence. *Id.*

The case for similar motive is even stronger here than in *McPherson*. In *McPherson*, the similar motive analysis turned on the prosecutor's questioning of a witness who had recanted, meaning the prosecutor's motive shifted from building her case to defending the integrity of the investigation. Here, by contrast, the alignment is direct and straightforward. Defense counsel in

the criminal trial and Plaintiff's counsel in this civil case share the identical goal of discrediting Gene Smith's identification of Plaintiff. There is no need to infer a shifted motive as the prosecutor in *McPherson* had in her direct examination of the witness; the motive here was the same from the outset of cross-examination.

Moreover, the cross-examination that actually occurred at the 1992 trial covered precisely the subjects that Plaintiff's counsel would wish to explore today: the delay in identification, the reliability of Smith's recognition, inconsistencies in his account, and the circumstances of the photo array procedure. The "similarity of the underlying issues" and "the context of the... questioning" plainly satisfy the similar motive requirement. *See McPherson*, 176 F.4th at 790 (quoting *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring)).

Finally, the passage of time between the 1992 criminal trial and this proceeding does not defeat admissibility. In *McPherson*, over twenty years separated the criminal trial from the §1983 case, and the Fourth Circuit found that lapse irrelevant where the subject matter of the questioning overlapped. *See McPherson*, 176 F.4th at 790. The same result follows here and Gene Smith's former testimony should be admitted under Fed. R. Evid. 804(b)(1).

## II.   THE COURT SHOULD PROVIDE A LIMITING INSTRUCTION THAT MAKES CLEAR THAT THE ENTIRETY OF GENE SMITH'S TESTIMONY AND ONE PORTION OF DETECTIVE BROWN'S TESTIMONY ARE INTRODUCED FOR THE TRUTH OF THE MATTER.

Defendants propose the following limiting instruction for the Court's consideration:

*Members of the jury, you have heard testimony recorded in a transcript from Plaintiff Clarence Shipley's 1992 criminal trial.*

*I instruct you that, with two exceptions noted below, this transcript is being admitted for a limited purpose only. Except as to the testimony of Edward Eugene ("Gene") Smith and certain portions of Detective David Brown's testimony* (Bates PLAINTIFF 144:1-146:21), *you may consider this evidence solely to determine what evidence and information was before the jury in the prior criminal proceeding; that is, what the criminal jury heard, saw, and had available to it when it reached its verdict.*

*For all witnesses other than Gene Smith and that one portion of Detective David Brown's testimony, you may not consider their 1992 trial testimony for the truth of the matters asserted. You are not to treat their statements as proof that the underlying facts stated are true. Their statements are before you only to show that they were made and were part of the record considered by the prior jury, not to establish the accuracy of what was said.*

*However, the testimony of Gene Smith and the one portion of Detective David Brown's testimony that I specified is different. This testimony has been admitted for*

6

*all purposes, including for the truth of the matters they asserted. You may consider their statements as evidence of the facts stated, and you may give that testimony the same weight and consideration you would give to any other testimony properly before you in this trial, subject to your assessment of their credibility.*

## CONCLUSION

For the foregoing reasons, Defendants Henneman, Gerst, and Stanton respectfully request that this Court admit Gene Smith's prior trial testimony from Plaintiff's 1992 criminal trial under Fed. R. Evid. 804(b)(1). Gene Smith is deceased and thus unavailable. His testimony was given under oath at a prior trial. And the party against whom it is now offered had both the opportunity and a similar motive to develop that testimony through cross-examination. All three elements of Fed. R. Evid. 804(b)(1) are satisfied. The Defendants further request that the Court provide the proposed limiting instruction related to the jury's consideration of the 1992 trial transcript.

Respectfully submitted,

/s/ Ephraim R. Siff
Shneur Z. Nathan, # 20707
Avi T. Kamionski, # 20703
Ephraim R. Siff, # 20761
Christine Goo, # 30378
Perry Wasserman, # 31209
Kimberly Mann, # 30602
NATHAN & KAMIONSKI LLP
575 South Charles Street, Suite 402
Baltimore, Maryland 21201
410-630-4611 (tel)
410-705-4379 (fax)
esiff@nklawllp.com

*Attorneys for Defendants Edward Nelson Henneman, Sr., Thomas Frank Gerst, and LeRoy Stanton*

7